[No. 28222.   Department One.   December 23, 1940.]

THE STATE OF WASHINGTON, *on the Relation of A. E. Stone, Plaintiff,* v. JAY OLINGER, *as Supervisor of Industrial Insurance, Respondent.*[1]

[1]Reported in 108 P. (2d) 630.

G. E. *Clark,* for relator.

*The Attorney General, Edw. S. Franklin* and *T. H. Little, Assistants,* for respondent.

STEINERT, J.—Relator, A. E. Stone, filed in this court an application for a writ of mandate to compel respondent, supervisor of the department of labor and industries, to transmit a voucher to the state auditor in payment of a permanent partial disability award theretofore made by the supervisor in favor of relator. Respondent demurred to relator's application, and at the same time filed an answer admitting in part, and denying in part, the allegations contained in relator's pleadings.

The essential facts are undisputed, and are as follows: On November 30, 1935, relator, while engaged in extrahazardous employment, sustained an injury to his right foot. The department recognized relator's claim of injury, and awarded him compensation for time loss, and allowed him medical treatment, until June 14, 1937. By order dated June 15, 1937, and pursuant to a prior finding by respondent that relator's condition had then become "fixed," the claim was closed with an award of $850, of which the sum of $780 was for twenty-six degrees of permanent partial disability, and the balance of $70 was for unpaid time loss. A warrant for the total amount was accordingly delivered to relator.

On July 6, 1937, relator, deeming the closing order to be unjust and unlawful, applied for a rehearing before the joint board. In his application for rehearing, relator alleged that, for the past eighteen months,

the condition of his foot had become progressively worse; that, because of the pain and suffering resulting from the injury, he was unable to engage in any gainful occupation; that he was then permanently and totally disabled; and that the amputation of his right foot would become necessary in the near future.

In response to relator's application, the joint board advised him by letter that his retention of the award for permanent partial disability would constitute an acknowledgment of the correctness of the supervisor's finding that his condition had become fixed. The letter concluded with the specific request that, if relator intended to stand upon the contention that his condition was not fixed, as indicated in his petition for a rehearing, he immediately return so much of the amount theretofore received by him as represented the permanent partial disability portion of the award, namely $780. Relator responded to that letter by returning the warrant to the department on July 14, 1937. That portion of the original award amounting to $70 for time loss is not involved in this proceeding.

Pursuant to relator's application for a rehearing, the joint board, on August 23, 1937, after reviewing the record of relator's claim, reversed the supervisor's order closing the claim and directed that official to "reopen" the matter as of June 15, 1937, for compensation and treatment as indicated. Relator was accordingly restored to his former temporary total disability, or time loss, classification, and, shortly thereafter, upon authorization of the department, underwent an operation in which his right foot was amputated.

On May 7, 1940, respondent, upon a review of the entire record as it then stood, including the medical reports, concluded that relator's condition had then become fixed, and accordingly entered an order directing that he be classified as permanently and totally

disabled, and that he be placed on the pension rolls as of May 15 of that year. At the same time, a charge of four thousand dollars was made against the accident cost experience of relator's employer, as required by statute.

After the claim had thus been closed, relator, on July 26, 1940, requested the return of the prior award for permanent partial disability, namely, $780. His contention was, and is, that he was entitled to the prior award in addition to the pension which was subsequently granted to him. The request was refused on the ground that relator's condition had at all times been one of permanent total disability, and that he was therefore not entitled to an additional award for permanent partial disability. Upon that refusal, relator instituted this proceeding.

Relator's contention is, specifically, that his present condition of permanent and total disability is due to aggravation of his condition as of June 15, 1937, when his claim was closed as a permanent partial disability case, and that he is therefore, by virtue of prior holdings of this court, entitled to repayment of the former award for partial disability. That contention is erroneous, both in fact and in law.

Relator's application for a rehearing, following the first closing of his claim on June 15, 1937, shows upon its face that his condition had not at that time become "fixed," as that term is used and understood in the procedure relative to workmen's compensation cases, and further, that "aggravation" of his disability did not occur after his claim had been *closed* upon a permanent partial disability classification. On the contrary, his application for a rehearing pleaded specifically, by date and description of ailments, that his condition was continuous, though progressive, from the time of his

original injury to the time when he was finally classified as eligible for a pension.

■ Before an allowance can properly be made for a permanent partial disability, the condition of the injured workman must have reached a fixed state. *Ray v. Department of Labor & Industries*, 177 Wash. 687, 33 P. (2d) 375; *Lackey v. Department of Labor & Industries*, 179 Wash. 594, 38 P. (2d) 345; *Elliott v. Department of Labor & Industries*, 187 Wash. 656, 61 P. (2d) 291, 188 Wash. 703, 62 P. (2d) 1343; *Miller v. Department of Labor & Industries*, 200 Wash. 674, 94 P. (2d) 764.

■ In considering cases of "aggravation," following a classification of "permanent partial disability," this court has always proceeded upon the principle that "aggravation," as that term is used in Rem. Rev. Stat., § 7679 [P. C. § 3472] (h), has reference to an increase of disability occurring *after* a claim has been closed. Illustrations of our recognition and acceptance of that principle are found in the following cases: *Mullen v. Department of Labor & Industries*, 157 Wash. 329, 288 Pac. 926; *Kelly v. Department of Labor & Industries*, 172 Wash. 525, 20 P. (2d) 1105; *Schraum v. Department of Labor & Industries*, 197 Wash. 336, 85 P. (2d) 262; *Reid v. Department of Labor & Industries*, 1 Wn. (2d) 430, 96 P. (2d) 492; *Litke v. Department of Labor & Industries*, 2 Wn. (2d) 536, 98 P. (2d) 981.

In the *Reid* case, *supra*, we said:

"It is a condition prerequisite to the reopening of a claim for additional compensation by reason of aggravation of disability that there be a determination as to the disability and the rate of compensation to be awarded therefor, and the further condition that there be a change in the claimant's condition since that determination."

A "reopening" of a claim connotes a former closing; a "determination" of a disability, and of the rate of

compensation to be awarded therefor, requires a finding that the disability has reached a fixed state. The purpose of determining the disability and the rate of compensation in the first instance is to close the claim. There can be no proper award for "aggravation" of a permanent partial disability unless it appears (1) that the condition of the injured workman has previously been determined to have reached a fixed state, (2) that a rate of compensation was established for such disability, (3) that the claim was closed on that basis, and (4) that an increase of disability has been found to have occurred after the date of such closing.

From the factual standpoint, as shown by relator's own pleadings, his contention does not meet those basic requirements.

Furthermore, as has been already indicated, relator's position is erroneous in law as well as in fact. His contention is based upon two well settled rules, which he asserts are controlling of this case.

The first rule, repeatedly declared by this court as the proper interpretation of Rem. Rev. Stat., § 7679, subds. (g) and (h), is that, where *aggravation* of an original injury results ultimately in permanent total disability, the injured workman is entitled to compensation for such permanent total disability without deduction of the amount of a previous award to the workman for permanent partial disability arising out of the same injury. *Arnold v. Department of Labor & Industries,* 168 Wash. 300, 11 P. (2d) 825; *Dry v. Department of Labor & Industries,* 180 Wash. 92, 39 P. (2d) 609; *Seagraves v. Department of Labor & Industries,* 185 Wash. 333, 54 P. (2d) 1010; *Hagen v. Department of Labor & Industries,* 193 Wash. 555, 76 P. (2d) 592.

In each of the cases so holding, however, it had either been found by the department, or else been de-

termined by the superior court, that aggravation, or change, in the workman's condition had occurred after the claim had been closed with a classification of permanent partial disability. That feature is not present in the instant case. It has not been determined by departmental order or by judicial decision that relator's condition as it existed at the time of the closing order of June 15, 1937, became aggravated thereafter. The theory of relator's application for a rehearing was that the closing order was unjust and unlawful, in that his condition required further treatment as of the date of that order. That theory is utterly inconsistent with a claim for permanent partial disability, which, as already shown, rests upon a fixity of condition.

The second rule invoked by relator, and one upon which he places ultimate reliance, is that, in the absence of fraud, or something of like nature which equity recognizes as sufficient to justify vacation of a judgment, the findings of the department, followed by a judgment resting thereon, become final and conclusive, reviewable only by appeal. *Luton v. Department of Labor & Industries*, 183 Wash. 105, 48 P. (2d) 199; *Lassiter v. Department of Labor & Industries*, 2 Wn. (2d) 182, 97 P. (2d) 645.

Relator's position in this connection is that, since the department, through its supervisor, originally made a finding that relator's condition had become fixed, and had thereupon entered its judgment, or order, of June 15, 1937, classifying relator as permanently partially disabled and closing the claim on that basis, the department had no power subsequently to decide that relator's condition had at all times been one of permanent total disability.

The difficulty with relator's contention is that the closing order of June 15, 1937, never became final and binding, because, at relator's own instance, the closing

order made by the supervisor was reversed by the joint board, and the relator was given the very classification and ultimate relief which he sought. The former order thus became null and void. There is now but one valid order in the record, and that is the order of May 7, 1940, wherein relator was classified as permanently and totally disabled.

This case does not present a situation wherein a workman who was properly given an award for permanent partial disability *subsequently* becomes permanently and totally disabled by reason of aggravation of his original injury. It is, rather, a case where a workman who, suffering a temporary total disability, for which he has received proper compensation and treatment, becomes not partially, but totally and permanently, disabled, for which latter condition he has also received the proper relief from the department.

Relator's ultimate contention requires the assumption of two inconsistent positions. The relief which relator obtained on his application to the joint board for a rehearing was sought and granted on the theory that his condition *was not fixed* at the time of the original closing order. The additional relief which he now seeks could be granted only on the theory that his condition at that time *was* fixed. Should the relator prevail in his contention, he will not only have received the compensation and relief to which he is justly entitled, but also, in addition thereto, would receive compensation to which he is not justly entitled. Such a result is not within the spirit or the purpose of the workmen's compensation act.

The writ is denied.

BEALS, MAIN, ROBINSON, and DRIVER, JJ., concur.