[Nos. 81921-1; 81940-8.   En Banc.]
Argued February 23, 2010.     Decided August 26, 2010.

THE STATE OF WASHINGTON, *Respondent*, v. LEO B. BUNKER, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. DONALD CARL WILLIAMS, *Petitioner*.

THE STATE OF WASHINGTON, *Petitioner*, v. RACHEL MARIE VINCENT, *Respondent*.

*Christopher Gibson* (of *Nielsen, Broman & Koch PLLC*), for petitioners Bunker and Williams.

*Mark E. Lindquist, Prosecuting Attorney for Pierce County*, and *Melody M. Crick, Deputy*, for petitioner State of Washington.

*Christopher Gibson* (of *Nielsen, Broman & Koch PLLC*), for respondent Vincent.

*Daniel T. Satterberg, Prosecuting Attorney for King County*, and *Randi J. Austell, Deputy*; and *Mark E. Lindquist, Prosecuting Attorney for Pierce County*, and *Kathleen Proctor, Deputy*, for respondent State of Washington.

¶1 J.M. Johnson, J. — Leo Bunker, Donald Williams, and Rachel Vincent were charged with criminal violations of no-contact orders under former RCW 26.50.110 (2006). The defendants[1] argue that the language of the statute criminalizes only those contacts with a protected party that are violent, threaten violence, or occur in a specifically prohibited place. We hold that former RCW 26.50.110 correctly criminalizes all no-contact order violations and affirm the defendants' convictions.

FACTS AND PROCEDURAL HISTORY

I. Division One—Bunker and Williams

A. Bunker

¶2 Leo Bunker was pulled over by the Washington State Patrol for speeding while driving his semitractor-trailer. Lillian Hiatt was Bunker's passenger. A records check on Bunker revealed two court orders prohibiting Bunker from contacting Hiatt. Bunker was arrested, charged, and convicted of violating no-contact orders under former RCW 26.50.110.

B. Williams

¶3 Donald Williams was convicted by a jury on three felony counts of violating a no-contact order under former RCW 26.50.110. The order prohibited Williams from coming within 500 feet of Linda Poole's residence and work and from having any contact with Poole except phone calls to arrange visits with their five-year-old daughter.

¶4 On March 13, 2006, Williams phoned Poole while she was at a grocery store, calling her several profane names. Poole returned home to find Williams waiting for her in an angry and intoxicated state. When Poole told Williams she was leaving to pick up their daughter from day care, Williams tried to take Poole's keys and grabbed her wrist. Poole broke free, and Williams placed his hand on her chest

---

[1] Bunker and Williams are petitioners and Vincent is the respondent in their respective preconsolidation cases. We refer to these three individuals by their common trial-level designation "defendants" for simplicity.

and pushed her. Frightened but uninjured, Poole got into her truck and left.

¶5 Williams called Poole while she drove to their daughter's day care. Williams yelled vulgar words over the phone at Poole so loudly that the day care provider was able to hear. Williams said he would trash the house, rip the telephone and computer out of the wall, take the tools and truck, and kidnap the children's dog if Poole did not immediately return home. Poole was afraid to call the police, so the day care provider called 911. An officer accompanied Poole home, but Williams was gone when Poole and the officer arrived.

¶6 During dinner with her daughter that night, Poole saw Williams standing at her window, trying to get in. He appeared more intoxicated than before. Poole was afraid and refused to let Williams in. Williams left, and Poole called the police. Williams denied contacting Poole on March 13, 2006, but acknowledged the order and previous violations. A jury convicted Williams of three no-contact order violations.

¶7 Bunker and Williams appealed their convictions, arguing that any no-contact order violation must also constitute an act requiring mandatory arrest under RCW 10.31.100(2)(a) or (b) to be a criminal offense. Neither the charging documents nor the jury instructions referenced either subsection of the statute. In a consolidated decision, Division One of the Court of Appeals affirmed Bunker's and Williams' convictions and held that no-contact order violations were crimes regardless of whether the offending conduct also satisfied RCW 10.31.100(2)(a) or (b). *State v. Bunker*, 144 Wn. App. 407, 183 P.3d 1086 (2008).

II. Division Two—Vincent

¶8 On January 4, 2007, Pierce County Sheriff's Department deputies pulled over Howard Seaworth for driving a car with expired tags. Rachel Marie Vincent was Seaworth's passenger. A records check revealed a no-contact order prohibiting Vincent from contacting Seaworth. Vincent ac-

knowledged she was aware of the no-contact order and had been arrested a few days prior for violating it. Vincent was again arrested for violating the no-contact order.

¶9 A Pierce County District Court judge found Vincent guilty in a stipulated facts trial, and Vincent appealed to Pierce County Superior Court. The superior court remanded the case with instructions to dismiss based on the Court of Appeals, Division Two decision in *State v. Hogan*, 145 Wn. App. 210, 192 P.3d 915 (2008). *Hogan* held that former RCW 26.50.110(1) (2000) criminalized no-contact order violations only if an arrest was required under RCW 10.31.100(2)(a) or (b). *Accord State v. Madrid*, 145 Wn. App. 106, 117, 192 P.3d 909 (2008). The superior court reasoned that Vincent's conduct did not warrant arrest under RCW 10.31.100(2)(a) or (b), so Vincent's no-contact order violation was not a crime.

¶10 The State petitioned this court for discretionary review, and we granted review, consolidating *Vincent* with *Bunker*. Division Two then published two opinions declining to follow its previous decisions in *Hogan* and *Madrid*, instead adopting Division One's *Bunker* analysis. *State v. Wofford*, 148 Wn. App. 870, 881, 201 P.3d 389 (2009); *State v. Allen*, 150 Wn. App. 300, 309, 207 P.3d 483 (2009). We agree with the *Bunker* court's results and affirm the defendants' criminal convictions.

ANALYSIS

¶11 Bunker, Williams, and Vincent were charged with violations of no-contact order provisions under former RCW 26.50.110 (2006), which reads in pertinent part as follows:

(1) Whenever an order is granted under this chapter, chapter 7.90, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, a violation of the restraint provisions, or of a provision excluding the person from a residence, workplace, school, or day care, or of a provision prohibiting a person from knowingly coming

within, or knowingly remaining within, a specified distance of a location, or of a provision of a foreign protection order specifically indicating that a violation will be a crime, *for which an arrest is required under RCW 10.31.100(2) (a) or (b)*, is a gross misdemeanor except as provided in subsections (4) and (5) of this section.[2]

(Emphasis added.) Subsections (4) and (5) elevate a crime's status from misdemeanor to felony. RCW 10.31.100(2)(a) requires an officer to arrest a person who violates a no-contact order's provisions prohibiting "acts or threats of violence" or entering or remaining in a prohibited location. Subsection (2)(b) applies to foreign protection orders only and is not implicated by the facts of this case. Arrest under either subsection is mandatory when probable cause exists; no arrest warrant is required.

¶12 The defendants argue that the statutory language italicized above modifies the phrase "a violation of the restraint provisions," and therefore no-contact order violations that do not satisfy the mandatory arrest requirements are not crimes. If this construction of the statute is rejected, then a violation of a no-contact order is a gross misdemeanor or felony.

¶13 It is clear from examining the statute in context that any no-contact order violation is a crime, and the arrest provision does not modify the phrase "a violation of the restraint provisions." The mandatory arrest requirements are thus not elements of the crime of violating a no-contact order under former RCW 26.50.110(1) (2006) The defendants' charging documents and jury instructions were not deficient, and we affirm the defendants' convictions.

### Statutory Interpretation

¶14 We review questions of statutory interpretation de novo and interpret statutes to give effect to the legisla-

---

[2] This version of RCW 26.50.110(1) was in effect from June 8, 2000 to July 22, 2007.

ture's intentions. *City of Spokane v. Spokane County*, 158 Wn.2d 661, 672-73, 146 P.3d 893 (2006). We begin by examining the plain language of the statute. *In re Forfeiture of One 1970 Chevrolet Chevelle*, 166 Wn.2d 834, 838-39, 215 P.3d 166 (2009). " 'The plain meaning of a statute may be discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.' " *Chadwick Farms Owners Ass'n v. FHC, LLC*, 166 Wn.2d 178, 186, 207 P.3d 1251 (2009) (internal quotation marks omitted) (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). Further, "[a]n act must be construed as a whole, considering all provisions in relation to one another and harmonizing all rather than rendering any superfluous." *State v. George*, 160 Wn.2d 727, 738, 158 P.3d 1169 (2007) (citing *State v. Greenwood*, 120 Wn.2d 585, 594, 845 P.2d 971 (1993)). Finally, we employ traditional rules of grammar in discerning the plain language of the statute. *Chevelle*, 166 Wn.2d at 839.

¶15 One such grammar rule is the last antecedent rule, which states that qualifying or modifying words and phrases refer to the last antecedent. *Spokane*, 158 Wn.2d at 673; *Berrocal v. Fernandez*, 155 Wn.2d 585, 600, 121 P.3d 82 (2005) (C. Johnson, J., dissenting). Related to this rule is the corollary principle that " 'the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to all antecedents instead of only the immediately preceding one.' " *Spokane*, 158 Wn.2d at 673 (emphasis and internal quotation marks omitted) (quoting *Berrocal*, 155 Wn.2d at 593). We do not apply the rule if other factors, such as context and language in related statutes, indicate contrary legislative intent or if applying the rule would result in an absurd or nonsensical interpretation. *See State v. McGee*, 122 Wn.2d 783, 789, 864 P.2d 912 (1993); *In re Pers. Restraint of Smith*, 139 Wn.2d 199, 204-05, 986 P.2d 131 (1999).

¶16 Contrary to the defendants' assertions, the last antecedent rule and its comma corollary do not apply here.

The plain language of former RCW 26.50.110 (2006) and a related statute indicate former RCW 26.50.110(1) (2006) was intended to criminalize all violations of no-contact order restraint provisions regardless of an independent need for arrest. This is contrary to the effect the statute would have if the last antecedent rule's comma corollary is applied. Further, applying the arrest provision to all antecedents would lead to absurd results that conflict with legislative intent. Thus, all violations of no-contact order restraint provisions are misdemeanors or felonies under former RCW 26.50.110 (2006).[3]

¶17 First, it is clear that the legislature intended a criminal misdemeanor or felony penalty for no-contact order violations under former RCW 26.50.110(1) (2006). Subsection (3) of the same statute states that violation of a no-contact order "shall *also* constitute contempt of court, and is subject to the penalties prescribed by law." Former RCW 26.50.110(3) (2006) (emphasis added). The word "also" indicates that contempt of court is punishment in addition to some other punishment. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 62 (2002) ("also" means "in addition : as well"). Subsection (1) clearly designates that this baseline punishment is a gross misdemeanor or felony, depending on the factual context. The language of former RCW 26.50.110 (2006) thus indicates the comma corollary should not apply.

¶18 Next, defendants' argued application of the last antecedent rule's corollary would render statutory language superfluous. RCW 10.99.040 governs the issuance of domestic violence no-contact orders. Subsection (4)(a) states that "[w]illful violation of a court order . . . is punishable under RCW 26.50.110." RCW 10.99.040. Subsection (4)(b) states that these no-contact orders are required to include the following warning: " 'Violation of this order is a criminal offense under chapter 26.50 RCW and will subject a violator

---

[3] No parties dispute that the clause "is a gross misdemeanor except as provided in subsections (4) and (5) of this section" in former RCW 26.50.110(1) (2006) applies to the statute's phrase "violation of the restraint provisions." Subsections (4) and (5) elevate criminal conduct from misdemeanor to felony status. Thus, if the arrest provision does not apply, then all violations of no-contact order restraint provisions are crimes.

to arrest.' " Applying the last antecedent rule's comma corollary to former RCW 26.50.110(1) (2006) would render RCW 10.99.040 superfluous in every instance where a no-contact order was violated but arrest was not independently required under RCW 10.31.100. Because we interpret statutes to harmonize with each other instead of conflict, *see George*, 160 Wn.2d at 738, the language of RCW 10.99.040 indicates that the comma corollary should not apply.

¶19 Finally, applying the last antecedent rule would contradict express legislative intent. If the defendants' interpretation is correct, a restrained party would commit a criminal offense by entering an expressly prohibited area near a protected party's home to visit a friend. Whether the protected party knew of the restrained party's visit would not matter. However, no criminal offense would occur if a restrained party purposefully encountered and harassed a protected party while the protected party was at work, shopping, or at any other location that was not expressly identified as a prohibited area, provided the restrained party did not threaten physical violence. The legislature has stated that the purpose of domestic violence laws is to give "maximum protection" to domestic violence victims. RCW 10.99.010. Criminalizing a visit to a friend but de-criminalizing blatant harassment flies in the face of this intent and is absurd.

¶20 The plain language of RCW 10.99.040 and former RCW 26.50.110(3) (2006), the intent of domestic violence statutes as codified in RCW 10.99.010, and the absurd results of applying the last antecedent rule's comma corollary to former RCW 26.50.110(1) (2006) show that the legislature did not intend the mandatory arrest provision to qualify the statutory phrase "violation of the restraint provisions." The mandatory arrest requirements were therefore not elements of the crime of violating a no-contact order.[4]

---

[4] Although it is clear that the mandatory arrest provision does not modify "a violation of the restraint provisions," it is not altogether clear which antecedents the arrest provision does modify. The *Bunker* court found:

*Legislative Amendment*

¶21 Even if we believed the plain language of former RCW 26.50.110(1) (2006) was ambiguous, contextual evidence clearly indicates that the defendants' proffered interpretation is inconsistent with legislative intent.[5]

¶22 We may refer to a statute's subsequent history to clarify an ambiguous statute's original intent. *See Rozner v. City of Bellevue*, 116 Wn.2d 342, 347-48, 804 P.2d 24 (1991). In 2007, the legislature unanimously amended former RCW 26.50.110 (2006) to exorcise the arrest provision and make clear that any violation of a no-contact order restraint provision was a crime. FINAL H.B. REP. on Substitute H.B. 1642, at 2, 60th Leg., Reg. Sess. (2007). Regarding the amendments, the legislature stated:

> The legislature finds this act necessary to *restore and make clear* its intent that a willful violation of a no-contact provision of a court order is a criminal offense and shall be enforced accordingly to preserve the integrity and intent of the domestic

---

[T]he legislature intended the phrase "for which an arrest is required under RCW 10.31.100(2)(a) or (b)" to modify the previous two complete clauses, respectively. That is, "RCW 10.31.100(2)(a)" refers to the clause "or of a provision excluding the person from a residence, workplace, school, or day care, or of a provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location," while "RCW 10.31.100(2) . . . (b)" refers to "or of a provision of a foreign protection order specifically indicating that a violation will be a crime." Former RCW 26.50.110. This construction is not particularly surprising, insofar as the *circumstances* referenced are precisely those "for which an arrest is required" in each respective subsection of RCW 10.31.100(2). It also has the advantage of being the only *construction* whereby each of the subsections of RCW 10.31.100(2)— (a) and (b)—is not being applied to circumstances that, by its own terms, are governed solely by the *other* subsection.

*Bunker*, 144 Wn. App. at 419-20 (alteration in original). Though this interpretation is plausible, the present issue is whether the arrest provision clause modifies the antecedent "violation of the restraint provisions." We need not decide what antecedents the arrest provision does modify.

[5] Though Bunker and Williams argued that the rule of lenity should apply at the Court of Appeals, they did not make the argument before this court. "[T]he rule of lenity requires us to interpret the statute in favor of the defendant absent legislative intent to the contrary." *State v. Jacobs*, 154 Wn.2d 596, 601, 115 P.3d 281 (2005). Because there is legislative intent to the contrary, the rule of lenity is not applicable in this case.

violence act. *This act is not intended to broaden the scope of law enforcement power or effectuate any substantive change to any criminal provision* in the Revised Code of Washington.

LAWS OF 2007, ch. 173, § 1 (emphasis added). This legislative statement of intent leaves no doubt regarding the correct interpretation of former RCW 26.50.110(1) (2006). The nature of the former and 2007 versions of the statute are substantively the same, and both criminalize all no-contact order violations.

CONCLUSION

¶23 We affirm the Court of Appeals in *Bunker* and reverse the superior court in *Vincent*. We hold each conviction was proper under the correct understanding of former RCW 26.50.110 (2006), which prohibits violations of no-contact orders. We overrule *Hogan* and *Madrid* to the extent they conflict with our analysis.

MADSEN, C.J.; C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, and STEPHENS, JJ.; and BAKER, J. PRO TEM., concur.

¶24 SANDERS, J. (dissenting) — Former RCW 26.50.110(1) (2006) is unambiguous. It compels us to affirm the Pierce County Superior Court in *State v. Vincent*, No. 07-1-03846-1 (July 23, 2007) and reverse the Court of Appeals in *State v. Bunker* and *State v. Williams*, 144 Wn. App. 407, 183 P.3d 1086 (2008). I dissent.

ANALYSIS

¶25 The majority today fumbles several relevant rules of statutory construction. Chiefly, it bypasses the following tenet: "In interpreting a statute, this court looks first to its plain language. *If the plain language of the statute is unambiguous, then this court's inquiry is at an end.* The statute is to be enforced in accordance with its plain

meaning." *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007) (emphasis added) (citations omitted). The majority similarly ignores the rule that obliges us to derive legislative intent from the plain language of the statute. "When statutory language is unambiguous, *we look only to that language* to determine the legislative intent *without considering outside sources.*" *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003) (emphasis added); *see also Tingey v. Haisch*, 159 Wn.2d 652, 657, 152 P.3d 1020 (2007) (when a " 'statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent' " (internal quotation marks omitted) (quoting *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005))). We review statutory construction de novo. *City of Spokane v. Spokane County*, 158 Wn.2d 661, 672-73, 146 P.3d 893 (2006).

¶26 Former RCW 26.50.110(1) provides:

> Whenever an order is granted under this chapter, chapter 7.90, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, *a violation of the restraint provisions*, or of a provision excluding the person from a residence, workplace, school, or day care, or of a provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location, or of a provision of a foreign protection order specifically indicating that a violation will be a crime, *for which an arrest is required under RCW 10.31.100(2) (a) or (b)*, is a gross misdemeanor except as provided in subsections (4) and (5) of this section.

(Emphasis added.)

¶27 While this statute is inelegant, its plain language is also unambiguous. When the irrelevant portions are removed, the statute reads, "[A] violation of the restraint provisions . . . , for which an arrest is required under RCW 10.31.100(2) (a) or (b), is a gross misdemeanor . . . ." Former RCW 26.50.110(1).

¶28 Despite the majority's claim to the contrary, there is no reason the last antecedent rule's corollary should not

apply here. Majority at 578-79. The majority's primary reason for dismissing this rule of grammar (i.e., that a subsequent statutory provision contains the word "also") makes little sense. Majority at 579. Aside from being loose justification for such an important aspect of the case, the logic falters. The "also" in former RCW 26.50.110(3) refers to the gross misdemeanor of violating a no-contact order *for which an arrest is required under RCW 10.31.100(2)(a) or (b)*. Subsection (3)'s contempt of court penalty *is* properly "in addition to some other punishment" when that punishment is warranted. Majority at 579. The majority's logic should not discharge the rule of grammar here.

¶29 Moreover, the majority's contention that the corollary to the last antecedent rule, if applied, would lead to absurd results does not ring true. *See id.* at 578, 579. That the legislature would characterize as gross misdemeanors only violations that carry the requirement of arrest under RCW 10.31.100—instead of all violations generally—is not absurd. It might not mesh with the majority's preferences, but it is not absurd.

¶30 Accordingly I would hold the qualifying phrase "for which an arrest is required under RCW 10.31.100(2) (a) or (b)" applies to all antecedents, not merely the immediately preceding one. Former RCW 26.50.110(1). The statute unambiguously limits gross misdemeanors to only those violations of no-contact orders for which an arrest is required. It does not criminalize *all* violations of no-contact orders.

¶31 The statute's plain language ends our inquiry. *See Armendariz*, 160 Wn.2d at 110. Yet the majority nonetheless delves into external sources, including amendments passed after the violations.[6] Majority at 581-82. Our rules

---

[6] The majority cites changes in the statute passed after these incidents occurred. Majority at 581-82. But don't these changes inherently support Bunker's argument that, pursuant to the language of former RCW 26.50.110(1), a gross misdemeanor required a mandatory arrest at the time he engaged in his behavior? Don't the changes necessarily mean the statute said something different (and presumably deficient) from what it says now? Why else would the legislature deem the changes necessary? In any event, we must consider the statute in effect at the time the violations occurred.

of statutory construction require us to derive legislative intent from the plain language of this unambiguous statute. *Delgado*, 148 Wn.2d at 727; *Tingey*, 159 Wn.2d at 657.[7]

¶32 Here, police found Leo Bunker in the willing company of Lillian Hiatt after Bunker was stopped for speeding. Hiatt, who had a restraining order against Bunker, was a passenger in the truck. The same theme applies to Rachel Vincent, whom police discovered in a car with a man who held a no-contact order against her. Donald Williams violated a no-contact order by yelling profanities at Linda Poole, grabbing Poole's wrist, trying to take her keys, and threatening to trash her house, steal her truck, and kidnap her dog. He also appeared on Poole's front porch late at night and rattled the doorknob in an attempt to enter her home.

¶33 For a conviction to stand the State must prove beyond a reasonable doubt *every* essential element of a crime charged. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The State charged the defendants with violations of former RCW 26.50.110(1). While each of the incidents here violated the provisions of the respective no-contact orders, the State did not allege—nor prove at trial—that arrest pursuant to RCW 10.31-.100(2)(a) or (b)[8] was an essential element of the crimes. The State merely charged violations of each no-contact order.

¶34 Accordingly I would hold the State improperly charged the defendants under former RCW 26.50.110(1). The charging documents and jury instructions omit essen-

---

[7] The majority never explicitly finds the language of former RCW 26.50.110(1) unambiguous, which is the starting point (and in this case the ending point) for statutory interpretation. It strongly implies the statute is unambiguous, *see* majority at 580, but nonetheless derives legislative intent only after referencing other statutes and external sources. *Id.* at 577-82. Because former RCW 26.50.110(1) is plain and unambiguous on its face, this extrastatutory romp is improper.

[8] RCW 10.31.100(2)(a) requires an officer to arrest a person who violates terms of a no-contact order against "acts or threats of violence," or a person who enters or remains in a prohibited location. RCW 10.31.100(2)(b), which applies to foreign protection orders, is not at issue here.

tial elements of the crimes. For Bunker and Vincent, it is not even clear they committed a crime under former RCW 26.50.110(1) because there was no act or threat of violence and no presence in prohibited places requiring arrest. The State—and this court—must live with the version of former RCW 26.50.110(1) in effect when the defendants violated the no-contact orders.

## CONCLUSION

¶35 Because the majority today misapplies our rules of statutory construction, I dissent. The plain language of former RCW 26.50.110(1) compels a different result.