IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, DEPARTMENT OF LABOR AND INDUSTRIES, | ) ) ) | No. 31081-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD M. SLAUGH, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| LOCKHEED MARTIN HANFORD CORPORATION, | ) ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, A.C.J. — The issue in this case is one over which the Department of

Labor and Industries and the Board of Industrial Insurance Appeals disagree: Does RCW

51.36.010 provide the supervisor of industrial insurance with discretion to consider

extending life-sustaining medical and surgical treatment to workers in all cases that the

department has accepted and then closed, or only cases of permanent total disability?

The conflicting positions of the board and the department are at issue in the case

of Donald M. Slaugh, who persuaded the board, although not the department, that the

supervisor enjoyed discretion to authorize continued treatment in his case, which was

closed in 2009 with an award for permanent partial disability. The department and Mr.

Slaugh's employer, Lockheed Martin Hanford Corporation, appealed the board's decision

to the Franklin County Superior Court, which construed the statute to limit the

supervisor's discretion to cases of permanent total disability.

We conclude that the statute unambiguously has the meaning given it by the

department and affirm the trial court.

## FACTS AND PROCEDURAL BACKGROUND

In November 2003, the department received an application for benefits filed on

behalf of Mr. Slaugh, alleging that he injured his lungs in January 2003 while in the

course of his employment with Lockheed Martin, a self-insured employer. The claim

was allowed and Lockheed Martin was directed to pay medical and time-loss

compensation benefits to Mr. Slaugh, who was found to have occupational asthma and

restrictive airways disease. In September 2009, the department issued an order closing

the claim with time-loss compensation previously paid and an award for permanent

partial disability.

Mr. Slaugh filed a notice of appeal and after a lengthy process involving a remand,

the department issued an order in May 2010, again stating the claim was closed with an

award for permanent partial disability. In response to Mr. Slaugh's request that the

supervisor exercise its discretion to authorize continued life-sustaining medical treatment

for his asthma, the order further stated:

> "The law does not permit the Department to consider the discretionary authorization for life-sustaining treatment per the second proviso of RCW 51.36.010 after a claim is closed with a permanent partial disability award."

Clerk's Papers (CP) at 101.

Mr. Slaugh appealed the order to the board. In 2003, the board had held in *In re Reichlin*[1] that the second proviso in RCW 51.36.010 permits the department to consider extending life-sustaining treatment in all closed cases. Its holding in *Reichlin* reversed an earlier construction of the statute by the board and is contrary to the construction of the statute by the department.

In proceedings before the industrial appeals judge, both the department and Lockheed Martin agreed that the board's decision in *Reichlin* was on point and would require reversal and remand, but both argued that the board should overrule *Reichlin* and return to the interpretation of RCW 51.36.010 contained in *In re Malmberg*, No. 86 1236, 1987 WL 61422 (Wash. Bd. of Indus. Ins. Appeals Nov. 12, 1987). Noting that "[i]t is not my place to overrule, disregard, or not follow Board precedent," the industrial appeals judge reversed and remanded the department's order with direction to the supervisor to exercise its discretion. CP at 104. The department and Lockheed Martin petitioned the

---

[1] No. 00 15943, 2003 WL 22273065 (Wash. Bd. of Indus. Ins. Appeals July 25, 2003).

3

board for review. The board denied review and the proposed decision and order of the

industrial appeals judge thereby became the decision and order of the board.

The department and Lockheed Martin appealed the board's decision to the

Franklin County Superior Court. The superior court accepted their construction of RCW

51.36.010 and reversed the board's decision. This appeal followed.

## ANALYSIS

Former RCW 51.36.010 (1986) included a lengthy paragraph (a paragraph now

codified within RCW 51.36.010(4)) that addresses how medical treatment in accepted

industrial insurance claims "shall be limited in point of duration." The paragraph consists

of three clauses, separated by semicolons. The parties dispute whether a second proviso

in the paragraph, which appears in its third clause and grants discretion to the supervisor

of industrial insurance to provide continuing life-sustaining treatment, applies to every

type of claim described in the three clauses or to only claims for permanent total

disability described in the third clause.

In an industrial insurance appeal we review the superior court's decision, not that

of the agency. RCW 51.52.110. We review whether substantial evidence supports the

trial court's factual findings and then review, de novo, whether the court's conclusions of

law flow from the findings. *Cantu v. Dep't of Labor & Indus.*, 168 Wn. App. 14, 21, 277

P.3d 685 (2012) (citing *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570

(1999)). In this case, the trial court's findings were limited to the procedural history of

4

Mr. Slaugh's claim, which is undisputed. Because the only question on appeal is a question of statutory construction, an issue of law, our review is de novo. *Romo v. Dep't of Labor & Indus.*, 92 Wn. App. 348, 353, 962 P.2d 844 (1998).

We interpret statutes to give effect to the legislature's intent. *City of Spokane v. Spokane County*, 158 Wn.2d 661, 672-73, 146 P.3d 893 (2006). If a statute's meaning is plain on its face, then the court will give effect to that plain meaning as an expression of legislative intent. *State ex rel. Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 242, 88 P.3d 375 (2004). Plain meaning is discerned not only from the provision in question but also from closely related statutes and the underlying legislative purposes. *Id.* If a statute is ambiguous then this court may resort to additional cannons of statutory construction or legislative history. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 12, 43 P.3d 4 (2002).

If we reformat the language in RCW 51.36.010 that is at issue to separate the clauses where semicolons appear and to highlight the proviso at issue,[2] it provides:

> In all accepted claims, treatment shall be limited in point of duration as follows:
>> In the case of permanent partial disability, not to extend beyond the date when compensation shall be awarded him or her, except when the

---

[2] Mr. Slaugh has continuously objected to the department's and Lockheed Martin's tendency to reformat the relevant portion of the statute in this fashion. His objection would be reasonable if it changed the meaning of the statute. By breaking the statute into the clauses signaled by its punctuation, however, we do not change its meaning, we only make it easier to follow our textual analysis.

worker returned to work before permanent partial disability award is made, in such case not to extend beyond the time when monthly allowances to him or her shall cease;

in case of temporary disability not to extend beyond the time when monthly allowances to him or her shall cease: PROVIDED, That after any injured worker has returned to his or her work his or her medical and surgical treatment may be continued if, and so long as, such continuation is deemed necessary by the supervisor or industrial insurance to be necessary to his or her more complete recovery;

in case of a permanent total disability not to extend beyond the date on which a lump sum settlement is made with him or her or he or she is placed upon the permanent pension roll: *PROVIDED, HOWEVER, That the supervisor of industrial insurance, solely in his or her discretion, may authorize continued medical and surgical treatment for conditions previously accepted by the department when such medical and surgical treatment is deemed necessary by the supervisor of industrial insurance to protect such worker's life or provide for the administration of medical and therapeutic measures including payment of prescription medications.*

(Emphasis added.)

This second, highlighted proviso was relied upon by Mr. Slaugh to request that the supervisor of industrial insurance exercise its discretion to extend life-sustaining medical and surgical treatment to him despite the order closing his claim.

Before an allowance can properly be made for a permanent partial disability, as was made for Mr. Slaugh in 2009, the condition of the worker must have reached a "fixed" state, meaning there is no further medical treatment that is likely to further improve his or her condition. *State ex rel. Stone v. Olinger*, 6 Wn.2d 643, 647, 108 P.2d 630 (1940); *Miller v. Dep't of Labor & Indus.*, 200 Wash. 674, 680, 94 P.2d 764 (1939). The purpose of determining the disability and the rate at which it will be compensated in

6

the first instance is to close the claim. *Olinger*, 6 Wn.2d at 648. The worker may later apply to reopen the claim, but in that event the worker must show that the industrially related disability has been aggravated and that the aggravation was proximately caused by the industrial injury. RCW 51.32.160; *Wilber v. Dep't of Labor & Indus.*, 61 Wn.2d 439, 444, 378 P.2d 684 (1963).

In *Reichlin*, the board was persuaded that RCW 51.36.010 provides a worker whose claim has been closed with a finding of permanent partial disability with a second avenue to further treatment: the discretion of the supervisor provided for by the concluding proviso of that section. The board reasoned:

> The section of the statute that is material to this case is the final proviso that states the supervisor of industrial insurance, in his sole discretion, may authorize continued medical and surgical treatment for accepted conditions to protect the worker's life or to provide for the administration of medical and therapeutic measures . . . that are necessary to alleviate continuing pain. As stated in the *Malmberg* concurrence and in the claimant's Petition for Review, that proviso follows the discussion of treatment for both PPD [permanent partial disability] and TPD [total permanent disability] workers. **There is no distinction made in the proviso.** Although the more typical course for a worker whose claim has been closed would be to apply to reopen for further treatment if the condition has worsened, given the nature of certain illnesses like asthma, that can be life threatening or with acute temporary flare-ups, that process is not of much benefit.
>
> The rules of statutory construction dictate that absent some obvious ambiguity, the words of the statute must be given their plain meaning. This statute read as a whole does not limit the discretion to provide continued treatment to TPD cases. That interpretation is also contrary to the plain statutory language and is contrary to the principle that any doubt, though we do not believe that there is really any doubt here, should be resolved in favor of the worker. We note that under certain circumstances, the Department **does** provide continued treatment in PPD cases—for example,

7

prostheses or hearing aids and what is associated with providing them. All that is sought here is that the Director exercises his discretion, and finds that RCW 51.36.010 provides for that relief. We reverse the order and letters under appeal and remand this matter for the Director to exercise his discretion.

2003 WL 22273065, at *3-4.

To discern the plain meaning of the statutory language, we employ traditional rules of grammar. *State v. Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010). Applying grammatical rules is therefore a first step in determining whether a statute has a plain meaning, unlike rules of statutory construction that we turn to only if a statute is ambiguous.

The language at issue is punctuated in a methodical way, to contain three clauses separated by semicolons. A semicolon is used to show a "stronger separation between the parts of a sentence than does a comma." MADELINE SEMMELMEYER & DONALD O. BOLANDER, THE NEW WEBSTER'S GRAMMAR GUIDE 235 (Berkeley ed. 1991). It is used to "separate phrases, clauses, or enumerations, of almost equal importance, especially when such phrases or clauses contain commas within themselves." LOIS IRENE HUTCHINSON, STANDARD HANDBOOK FOR SECRETARIES 239 (8th ed. 1979). The Washington Code Reviser's style manual provides that "[a] semicolon is not used where a comma will suffice, but is to be used to separate phrases already containing commas." STATUTE LAW COMM., OFFICE OF THE CODE REVISER, BILL DRAFTING GUIDE 2013, pt. IV(1)(b), *available at* http://www.leg.wa.gov/CodeReviser/Pages/bill_drafting_guide.aspx#part4.

8

The same directive was contained in the Bill Drafting Guide in use in the 1965 legislative session, which is when the proviso at issue was enacted. STATUTE LAW COMM., OFFICE OF THE CODE REVISER, REVISED BILL DRAFTING GUIDE FOR USE IN THE 1965 LEGISLATIVE SESSION, pt. II(4), at 15 (Dec. 1, 1964); *see* LAWS OF 1965, 1st Ex. Sess., ch. 166, § 2.

The structure of the three clauses of the statute is parallel. The first clause begins "[i]n the case of permanent partial disability" and proceeds to dictate a duration. The second begins "in case of temporary disability" and proceeds to dictate a different duration—in this case, subject to the first proviso in the paragraph, introduced by a colon. "A colon may introduce a summing up, an illustration, quotation, or enumeration, for which the previous words in the sentence have prepared the reader." HUTCHINSON, *supra*, at 241. In *Stuart v. East Valley Consolidated School District No. 361*, 61 Wn.2d 571, 575, 379 P.2d 369 (1963), the court differentiated the use of a colon, which one could contend introduced matter that was explanatory of the phrase that preceded it and therefore restrictive, from the use of a semicolon, indicating that matter that follows is not restrictive, but supplementary. The Washington Code Reviser's guide describes a colon as being used "to introduce a list or a proviso." BILL DRAFTING GUIDE 2013, pt. IV(1)(e). Indeed, while the Code Reviser's guide discourages the use of provisos, it states that "[i]f used, the proviso should be preceded by a colon." *See id.* at pt. IV(1)(d).

9

The third clause begins "in case of a permanent total disability" and proceeds to dictate a third, distinct, duration, subject to the proviso that is at issue; this second proviso is again introduced by a colon.

This methodical, parallel structure of the paragraph is solid textual support for the department's and Lockheed Martin's position that each clause is addressing limits on the duration of treatment for a different category of disability. *Cf. State v. Haye*, 72 Wn.2d 461, 468 n.1, 433 P.2d 884 (1967) (suggesting that the reason for punctuating different matters differently in a constitutional provision may have been due to the differing nature of the matters). An act should be read as punctuated unless there is some reason to do otherwise. 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47:15, at 264 (6th ed. 2000).

While "the meaning of a statute will typically heed the commands of its punctuation . . . a purported plain-meaning analysis based only on punctuation is necessarily incomplete and runs the risk of distorting a statute's true meaning." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 454, 113 S. Ct. 2173, 124 L. Ed. 2d 402 (1993). Beyond the punctuation, the department and Lockheed Martin rely on the last antecedent rule, a grammatical rule commonly applied in discerning the meaning of a statute. *Bunker*, 169 Wn.2d at 578. The last antecedent rule provides that "unless a contrary intention appears in the statute, qualifying words and phrases refer to the last antecedent." *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 781, 903 P.2d

443 (1995). The rule disfavors an interpretation that would have words "leaping across stretches of text, defying the laws of both gravity and grammar." *Flowers v. Carville*, 310 F.3d 1118, 1124 (9th Cir. 2002). The department and Lockheed Martin argue that applying the last antecedent rule compels the conclusion that the proviso at issue qualifies only the third clause, dictating the duration of treatment of workers determined to have a permanent total disability.

Mr. Slaugh responds that a corollary to the last antecedent rule is that "the presence of a comma before the qualifying phrase is evidence that the qualifier is intended to apply to all antecedents instead of only the immediately preceding one." Br. of Appellant at 13 (citing *Judson v. Associated Meats & Seafoods*, 32 Wn. App. 794, 801, 651 P.2d 222 (1982)). But in *Judson*, and in the usual case, the antecedents are themselves separated by commas, not semicolons, thereby signifying that the qualifying phrase might have as close a relation to the first preceding antecedent as it has with the last. At least one court has concluded that where a semicolon is used to separate two antecedent phrases, the application of the modifying phrase to those antecedents is affected, with the semicolon interpreted as separating that phrase from a subsequent modifying phrase. *Morella v. Grand Union/New Jersey Self-Insurers Guar. Ass'n*, 391 N.J. Super. 231, 241, 917 A.2d 826 (2007), *aff'd*, 193 N.J. 350, 939 A.2d 226 (2008). We agree.

11

Mr. Slaugh also argues that the last antecedent rule is not to be applied inflexibly or taken as always binding. *See State v. Wofford*, 148 Wn. App. 870, 882, 201 P.3d 389 (2009). Courts do not apply the rule "if other factors, such as context and language in related statutes, indicate contrary legislative intent or if applying the rule would result in an absurd or nonsensical interpretation." *Bunker*, 169 Wn.2d at 578. Mr. Slaugh attaches importance to language and format differences between the first proviso in RCW 51.36.010—introduced by "PROVIDED"—and the second—introduced by "PROVIDED, HOWEVER"—as connoting a greater break and therefore an indication that the legislature intended the second proviso to apply to all antecedent clauses preceding it. Reply Br. of Appellant at 3. He cites no authority, legal or grammatical, for the distinction, and we see no difference.

He finally argues that given the fundamental purpose of the Industrial Insurance Act, Title 51 RCW, to benefit workers, the most reasonable reading of the proviso is to give the supervisor discretion to provide all workers with any necessary life-sustaining medical treatment and monitoring, since permanently partially disabled workers like Mr. Slaugh, while eligible to apply to reopen a claim, can encounter substantial delay. Br. of Appellant at 14. As pointed out by the department and Lockheed Martin, however, neither process for obtaining further treatment provides an explicit guarantee of timely care and a worker applying to reopen a claim may obtain immediate life-sustaining treatment. Department regulations provide that if a worker applies to reopen a claim,

12

"[n]ecessary treatment should not be deferred pending a department or self-insurer adjudication decision," although if reopening is denied, the treatment costs will become the financial responsibility of the worker.

WAC 296-20-097.

Nothing in the context or language of Title 51 RCW indicates that the legislature did not intend for the proviso to apply only to the last antecedent, and applying the last antecedent rule does not lead to absurd or strained consequences. It is appropriately applied here.

Finally, Mr. Slaugh argues that (1) we must surely accept the board's construction of the statute in *Reichlin* as a reasonable one; (2) a statute is ambiguous when it is susceptible to two or more reasonable interpretations, *see, e.g., State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (2010); and (3) any ambiguity in the Industrial Insurance Act must be resolved in favor of the injured worker, *see Harry v. Buse Timber & Sales, Inc.*, 166 Wn.2d 1, 201 P.3d 1011 (2009); *see also* RCW 51.12.010 (announcing a policy of liberal construction). We need not and do not accept the board's construction of the statute in *Reichlin* as reasonable, however.

We interpret the meaning of statutes de novo and may substitute our interpretation of the law for that of the agency. *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 593, 90 P.3d 659 (2004). Where a statute is within an agency's special expertise, we accord the agency's interpretation great weight, provided that the statute is

13

ambiguous. *Id.* "Absent ambiguity, however, there is no need for the agency's expertise in construing the statute." *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 628, 869 P.2d 1034 (1994). The rule of liberal construction likewise does not apply where we find no ambiguity. *Harris v. Dep't of Labor & Indus.*, 120 Wn.2d 461, 474, 843 P.2d 1056 (1993).

As the department points out, if we found RCW 51.36.010 to be ambiguous, it would be the department's interpretation to which we would be required to defer, not the board's, because the department is the executive agency that is charged with administering the statute. *See Port of Seattle*, 151 Wn.2d at 594. The department has demonstrated, including through a 1978 legal opinion from the attorney general's office, that it has been the department's longstanding interpretation of the provisos added to RCW 51.36.010 that the second proviso modifies only the clause addressing permanent total disability.

We find no ambiguity, however. With clear language and a clear structure the legislature has, in RCW 51.36.010, established separate and distinct provisions for the duration of treatment in the case of the three separate types of disability: permanent partial, temporary, and permanent total. The final proviso granting discretion to the

14

supervisor to authorize continued life-sustaining treatment plainly applies only in case of a permanent total disability.

Affirmed.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Brown, J.

_____
Kulik, J.