# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53002-3-II |
| Respondent, | |
| v. | |
| AARON JASON THOMAS, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, A.C.J. — Aaron Jason Thomas appeals his jury trial conviction for felony violation of a domestic violence no-contact order. He argues that (1) the evidence was insufficient to prove his knowledge of the no-contact order, (2) his trial counsel provided ineffective assistance of counsel by failing to move to exclude a witness during the jury selection process, (3) the prosecutor committed misconduct during closing argument by repeatedly expressing his personal opinion about the evidence, (4) the trial court abused its discretion by refusing to consider the mitigating circumstance of the protected party's initiation of the contact when considering Thomas's request for an exceptional sentence downward, and (5) cumulative error denied him his due process right to a fair trial. In his statement of additional grounds for review[1] (SAG), Thomas further argues that his trial counsel provided ineffective assistance by failing to question during voir dire a potential juror who was familiar with the county prosecutor and that the trial court erred by not removing this juror.

---

[1] RAP 10.10.

We hold that (1) the evidence was sufficient to prove Thomas's knowledge of the no-contact order, (2) Thomas fails to establish that the presence of a witness during voir dire was prejudicial, (3) because Thomas failed to object to the alleged prosecutor's statements of personal opinion and fails to show that these comments were so flagrant and ill-intentioned that they could not have been cured by a proper instruction, Thomas has waived his prosecutorial misconduct claim, (4) the trial court abused its discretion by refusing to consider the proposed mitigating factor, (5) cumulative error did not deny Thomas his due process right to a fair trial, and (6) Thomas's SAG arguments fail. Accordingly, we affirm Thomas's conviction, but we remand to the trial court for resentencing.

FACTS

I. BACKGROUND

Thomas and Brittany Elzinga had periodically been involved in a relationship since 2009. In March 2015, Thomas was convicted of violating a no-contact order related to Elzinga. As a result of this conviction, the superior court entered a domestic violence no-contact order that prohibited Thomas from contacting Elzinga for five years. In November 2018, Elzinga contacted Thomas and asked him to meet her.

On November 20, Officers Kyle Hoffman and Chad Pearsall of the Aberdeen Police Department responded to a call reporting that two people were having sex in a car parked behind a local store. Upon arriving, the officers found a man and a woman in a car. The woman initially gave the police a different name and date of birth date, but she later identified herself as Elzinga. The man identified himself as Aaron Thomas. After discovering and confirming the March 2015 no-contact order, the officers arrested Thomas for violating the no-contact order.

The State charged Thomas with a felony violation of a domestic violence no-contact order. The case proceeded to a jury trial.

## II. PROCEDURE

### A. JURY SELECTION

During voir dire of the potential jurors, Pearsall was seated with the prosecutor. The prosecutor introduced Pearsall and told the potential jurors that Pearsall would be "assisting" or "helping" the prosecutor that day. Report of Proceedings (RP) (Jan. 25, 2019) at 8, 19. Defense counsel did not object to Pearsall's presence or move to exclude any witnesses from the voir dire.

The trial court asked the potential jurors whether anyone knew any prosecutors or criminal defense attorneys or anyone employed by these offices. Juror 8 responded that he knew Grays Harbor County Prosecutor Katie Svoboda because he had been the Grays Harbor County Treasurer for 35 years. Neither party questioned Juror 8 further about his relationship with Svoboda or challenged Juror 8 for cause. Juror 8 was seated as a juror.

### B. TRIAL TESTIMONY AND EXHIBITS

At trial, the State presented testimony from Hoffman, Pearsall, and Elzinga. Thomas did not present any evidence, and defense counsel did not cross-examine any of the witnesses.

The two officers testified about finding Thomas and Elzinga together in the car, discovering the no-contact order, and arresting Thomas. Elzinga testified that despite being aware of the no-contact order, she "initiated [a] conversation" with Thomas because she "felt like [she] needed closure," and then met with Thomas. RP (Jan. 25, 2019) at 93.

In addition to this testimony, the State offered and the trial court admitted three exhibits: (1) a certified copy of the March 23, 2015 domestic violence no-contact order prohibiting Thomas

from contacting Elzinga for five years, (2) a redacted copy of a certified copy of the March 23, 2015 judgment and sentence showing that Thomas had been convicted of a felony violation of court order, and (3) a redacted copy of a certified copy of the December 9, 2011 judgment and sentence showing that Thomas had been convicted of five counts of felony violation of a court order.

The March 2015 domestic violence no-contact order, which was filed under the same cause number and on the same day as the March 2015 judgment and sentence, identified Elzinga as the protected party. The no-contact order also warned Thomas that he could be arrested for violating the order even if Elzinga invited or allowed him to violate the order. Thomas signed the no-contact order, acknowledging that he had either read the order or someone had read the order to him, that he understood the order, and that he had received a copy of the order.

C. CLOSING ARGUMENT

In its closing argument, the State argued that Thomas had knowledge of the no-contact order and knowingly violated it by contacting Elzinga. The State also argued that Thomas and Elzinga were members of the same household. We describe the relevant portions of this argument in more detail below.

Defense counsel's argument focused on reasonable doubt and challenged the State's assertion that Thomas's convictions for similar offenses had any relevance related to his knowledge of the relevant no-contact order.

The jury found Thomas guilty of violating the no-contact order. It also found by special verdict that Thomas and Elzinga had been part of the same family or household.

D. SENTENCING

At sentencing, defense counsel requested an exceptional sentence downward under RCW 9.94A.535(1)(a) based on Elzinga's initiation of the contact. Defense counsel asserted that Elzinga was one of the only people Thomas knew and that she had potentially "manipulated [him] into having sex with her." RP (Feb. 8, 2019) at 4.

The State argued against the exceptional sentence downward, noting that Thomas had been convicted for violating such orders before and that he knew that he should not violate the court order. Defense counsel responded that Thomas knew what he did was wrong but that they were hoping the court would "show him mercy" because Elzinga had initiated the contact. RP (Feb. 8, 2019) at 8.

After hearing argument, the trial court declined to consider as a mitigating factor the fact Elzinga may have initiated and willingly participated in the illegal conduct, noting that defense counsel had not cited any cases supporting this mitigating factor and the court was unaware of any such cases:

> All right. So, *I am not aware of any case that actually found on a -- after on appeal that a person protected by a no contact order that a sentence could be -- that that could be found a mitigating circumstance* and that is somehow the instigation for the crime; I'm not aware. Defense didn't cite anything. So, *I think that's an interesting argument.*
>
> . . . .
>
> *We have a lot of interesting legal arguments with no legal support.* It's a common problem. Unfortunately, that's -- the court orders say what they say, and you are well aware of the terms and conditions of the court orders. So that's, you know, that's where we are.
>
> . . . .
>
> All right. Mr. Thomas, you know, it's a difficult situation, but I am -- I think the factors go both ways, and, you know, there is really no range for me. So you are well above the maximum [offender score], nine, you got 22, *there will be all*

> *sorts of reasons for the court not to grant a mitigating factor.* Just out of prison and other things, those things weren't plead, but really, *what your attorney is arguing, it's a good argument, but I just don't see any legal authority for it*, because you would be creating an appeal by the state, and then maybe you can get some authority for that, but that's not something I am -- we do that in every case right from the beginning when you are enforcing a no contact order.

RP (Feb. 8, 2019) at 12-15 (emphasis added).

The trial court sentenced Thomas to 60 months of confinement. Thomas appeals his conviction and sentence.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Thomas first argues that the evidence was insufficient to prove his knowledge of the no-contact order. We disagree.

Evidence is sufficient to support a verdict if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In evaluating a sufficiency of the evidence claim, we assume the truth of the evidence offered by the State and all reasonable inferences drawn from that evidence. *Homan*, 181 Wn.2d at 106. We defer to the trier of fact's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. *Homan*, 181 Wn.2d at 106. And circumstantial evidence and direct evidence are equally weighted. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014).

A person knows or acts knowingly when "he or she is aware of a fact, facts, or circumstances or result." RCW 9A.08.010(1)(b)(i). A jury is permitted to find that a person knew

or acted knowingly when "[h]e or she has information which would lead a reasonable person in the same situation to believe that facts exist." RCW 9A.08.010(1)(b)(ii).

Taking the evidence in the light most favorable to the State, the March 2015 no-contact order itself was sufficient for the jury to find that Thomas knew about the order because Thomas signed the order, which stated that he had reviewed and understood the no-contact order. And there was no evidence suggesting that the signature on the no-contact order was not Thomas's or that he did not understand the nature of what he was signing. Thus, the evidence, taken in the light most favorable to the State, was sufficient to allow a jury to have found that Thomas had information that would have led a reasonable person in the same situation to know about the March 2015 no-contact order. Accordingly, Thomas's sufficiency of the evidence argument fails.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Thomas next argues that defense counsel's failure to move under ER 615 to exclude Pearsall from the voir dire constituted ineffective assistance of counsel. Thomas does not show that the failure to move to exclude Pearsall was prejudicial.

To prevail on an ineffective assistance of counsel claim, Thomas must show that (1) defense counsel's representation was deficient, and (2) this deficient representation was prejudicial. *State v. Estes*, 188 Wn.2d 450, 457-58, 395 P.3d 1045 (2017). Counsel's representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Estes*, 188 Wn.2d at 458. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Estes*, 188 Wn.2d at 458. Reasonable probability in this context means a probability sufficient to undermine confidence in the outcome. *Estes*, 188 Wn.2d at 458. Because Thomas must show

both prongs, a failure to demonstrate either prong ends our inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

Even presuming, but not deciding that a motion to exclude Pearsall from voir dire would have been successful, Thomas does not establish a reasonable probability that the result of the proceedings would have been different had defense counsel made such a motion and the trial court granted it. Pearsall's testimony was only relevant to whether Thomas was found with Elzinga and whether a no-contact order existed. As to Thomas's contact with Elzinga, the uncontested evidence from the two remaining witnesses, Hoffman and Elzinga, established the contact. And as to the existence of the no-contact order, the jury was presented with a copy of the no-contact order, and Elzinga testified about the no-contact order.

Because Pearsall did not testify about facts that were not supported by other, uncontested evidence, Thomas does not establish a reasonable probability that the result of the proceedings would have been different if defense counsel had successfully moved to exclude Pearsall from voir dire. Accordingly, Thomas does not establish the required prejudice, and this argument fails.

### III. PROSECUTORIAL MISCONDUCT

Thomas next argues that the prosecutor committed misconduct during closing argument by repeatedly expressing his personal opinion about the case and improperly commenting on the evidence.

#### A. LEGAL PRINCIPLES

To prevail on his claim of prosecutorial misconduct, Thomas must establish that the prosecutor's alleged conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). When, as is the case here, a defendant fails to object to alleged

misconduct, the defendant waives the error unless he can show that the misconduct was so flagrant and ill-intentioned that no instruction could cure the prejudice and that the prejudice had a "'substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 760-61 (quoting State v. *Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

B.  ARGUMENT AT ISSUE

Thomas points to four statements that the prosecutor made during closing argument as improper expressions of his personal opinion. Two of the statements relate to Thomas's knowledge of the no-contact order, and two relate to the special verdict, which required the jury to find whether Thomas and Elzinga were members of the same "household." [2] Clerk's Papers (CP) at 51; RP (Jan. 25, 2019) at 118-20.

Frist, when discussing the evidence relevant to Thomas's knowledge of the no-contact order, the prosecutor, apparently referring to the exhibits, stated, "So what information in this case

---

[2] The jury instructions defined "household member" as follows:

> For purposes of this case, family or household members means adult persons who are presently residing together or who have resided together in the past or persons sixteen years of age or older who are presently residing together or who have resided together in the past and who have or have had a dating relationship or a person sixteen years of age or older with whom a person sixteen years of age or older has or has had a dating relationship.
> "Dating relationship" means a social relationship of a romantic nature. In deciding whether two people had a "dating relationship," you may consider all relevant factors, including (a) the nature of any relationship between them; (b) the length of time that any relationship existed; and ( c) the frequency of any interaction between them.

CP at 47 (Jury Instruction 7).

would lead the defendant to have knowledge that the [no-contact] order existed? *I think that's right here*, right here, and right here."[3]  RP (Jan. 25, 2019) at 115 (emphasis).

Second, the prosecutor then emphasized that to determine whether Thomas knew about the no-contact order, the jury would need to consider "the context and the documents and the evidence that [the jury had.]"  RP (Jan. 25, 2019) at 115.  The prosecutor then continued, "*It would - it seems to me*, and you're the ones who have to decide, it would seem rather absurd that you would go through two criminal convictions for the same thing and not know that you shouldn't do that."  RP (Jan. 25, 2019) at 115-16 (emphasis added).

Third, when discussing the special verdict requiring the jury to determine whether Thomas and Elzinga were members of the same family or household, the prosecutor stated, "Now, that's the only question that you have to answer with respect to domestic violence.  And you have that - the - there's a definition of that in your jury instructions.  And it's a little bit - it's - I don't know. It's a little more - *that's just my opinion*."  RP (Jan. 25, 2019) at 118-119 (emphasis added). Immediately following this argument, the prosecutor reminded the jury that his argument was not evidence and that his argument merely represented "how [the State] see[s] the case and hopefully [how] you see it."  RP (Jan. 25, 2019) at 119.  The prosecutor then asked the jury to refer to its own notes and memories to determine what the evidence was.

---

[3] Even if Thomas had not waived this argument, this statement, taken in context, was no more than the prosecutor directing the jury to consider the exhibits as evidence of Thomas's knowledge of the no-contact order.  It was not an expression of the prosecutor's opinion, and defense counsel was not deficient for failing to object to this argument.

And fourth, when discussing the special verdict, the State argued, "So *I think* based on Ms. Elzinga's testimony you can conclude beyond a reasonable doubt that they were in a domestic relationship. This is a domestic violence case." RP (Jan 25, 2019) at 120 (emphasis added). Defense counsel did not object. RP (Jan. 25, 2019) at 120. Thomas did not object to any of the prosecutor's statements. RP (Jan. 25, 2019) at 115-16, 118-20.

C. WAIVER

Thomas asserts that the frequency of the prosecutor's improper statements shows that they were flagrant and ill-intentioned and that their combined effect was prejudicial. But the prosecutor made these statements in the context of asking the jury to consider the evidence. And an objection and an instruction to the jury to remind it that it was the sole judge of credibility and the value and weight of the evidence, and that counsels' remarks and argument were not argument would have cured any potential prejudice despite their frequency.[4]

Because Thomas fails to show that the prosecutor's statements were flagrant and ill-intentioned, he waived his prosecutorial misconduct claim.

IV. EXCEPTIONAL SENTENCE

Thomas further argues that the trial court abused its discretion by denying Thomas's request for an exceptional sentence downward based on Elzinga initiating the contact with Elzinga. He asserts that the court refused to consider the proposed mitigating circumstance. We agree that

---

[4] The trial court had already instructed the jury that it was the sole judge of credibility and to the value and weight of the evidence.

the trial court erred by refusing to consider the mitigating factor of Elzinga's initiation of the contact.[5]

Although "'no defendant is entitled to an exceptional sentence below the standard range, every defendant is entitled to ask the trial court to consider such a sentence and to have the alternative actually considered.'" *State v. Bunker*, 144 Wn. App. 407, 421, 183 P.3d 1086 (2008), (quoting *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005)), *aff'd*, 169 Wn.2d 571, 238 P.3d 571 (2010). "A trial court's erroneous belief that it lacks the discretion to depart downward from the standard sentencing range is itself an abuse of discretion." *Bunker*, 144 Wn. App. at 421.

Washington courts have held that although a protected party's consent is not a defense to violating a no-contact order, the protected party's willing presence is a mitigating factor that the court may consider at sentencing. *Bunker*, 144 Wn. App. at 421 (rejecting the State's argument that because consent is not a defense to the crime of violating a no-contact order, the trial court is prohibited from considering the victim's willing participation in the crime when sentencing the defendant). And the legislature has provided that sentencing courts may consider a mitigated sentence when "[t]o a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident." RCW 9.94A.535(1)(a).[6] Here, the trial court's statements show that if it understood that there was a legal basis for this mitigating factor, it would have considered this

---

[5] Thomas also argues that the trial court erred by relying on his recent recidivism, which he characterizes as an impermissible aggravating factor not found by the jury; Thomas's inappropriate language during his statement to the court; and Thomas's decision to proceed to trial. Because we remand for resentencing on other grounds, we do not reach these issues.

[6] The legislature amended this statute in 2019, but the amendment did not change this subsection. Laws of 2019, ch. 219 § 1. Accordingly, we cite to the current version of the statute.

factor when weighing the factors in favor of and against imposing a sentence below the standard range.

Although the trial court is not required to impose a mitigated exceptional sentence, we remand Thomas's case for resentencing to allow the trial court to exercise its discretion in determining whether an exceptional sentence is appropriate in light of this mitigating factor. *See State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015) (remanding for resentencing after holding that trial court erred when it concluded it could not consider a defendant's youth as a mitigating factor); *Bunker*, 144 Wn. App. at 422 (remanding for trial court to consider this same mitigating factor).

## V.  CUMULATIVE ERROR

Thomas further argues that cumulative error denied him his due process right to a fair trial.  We disagree.

"The cumulative error doctrine applies where a combination of trial errors denies the accused of a fair trial, even where any one of the errors, taken individually, would be harmless." *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014).  "Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair." *Emery*, 174 Wn.2d at 766.

Other than the sentencing issue, the only potential errors in this case are the prosecutor's statements and the officer's presence during voir dire.  But in light of the uncontroverted evidence establishing both the offense and the domestic violence special verdict, these potential errors would not have rendered Thomas's trial fundamentally unfair.  Accordingly, Thomas does not establish cumulative error.

## VI. SAG

In his SAG, Thomas argues that he received ineffective assistance of counsel when defense counsel failed to challenge Juror 8, who stated that he had a "close friendship" with the Grays Harbor County Prosecutor Katie Svoboda. SAG (Additional Ground 1). Thomas also argues that the trial court should not have allowed Juror 8 to remain on the jury because of Juror 8's "close relationship[]" with Svoboda and the fact Juror 8 had worked in the county courthouse for more than 35 years as the county treasurer. SAG (Additional Ground 2).

Juror 8 did not state that he had a "close friendship" with Svoboda, instead, he stated that he knew Svoboda because he had worked as the treasurer in Grays Harbor County for 35 years. Without additional information, we cannot determine if there would have been a different outcome if defense counsel had further questioned Juror 8 on this matter. Accordingly, based on this record, Thomas does not show prejudice and does not establish ineffective assistance of counsel based on defense counsel's failure to further question Juror 8. *Estes*, 188 Wn.2d at 458.

Thomas's claim, that the trial court should have addressed whether it had a mandatory duty to dismiss Juror 8 even after it seated this juror, fails. "Both RCW 2.36.110 and CrR 6.4(c)(1) create [in the trial court] a mandatory duty to dismiss an unfit juror even in the absence of a challenge." *State v. Lawler*, 194 Wn. App. 275, 284, 374 P.3d 278 (2016). But without knowing more about Juror 8's relationship with Svoboda, the trial court had no basis upon which to dismiss Juror 8.

Accordingly, Thomas's SAG arguments fail.

No. 53002-3-II

CONCLUSION

We hold that (1) the evidence was sufficient to prove Thomas's knowledge of the no-contact order, (2) Thomas fails to establish that the presence of a witness during voir dire was prejudicial, (3) because Thomas failed to object to the alleged prosecutor's statements of personal opinion and fails to show that these statements were so flagrant and ill-intentioned that they could not have been cured by a proper instruction, Thomas has waived his prosecutorial misconduct claim, (4) the trial court abused its discretion by refusing to consider the proposed mitigating factor, (5) cumulative error did not deny Thomas his due process right to a fair trial, and (6) Thomas's SAG arguments fail. Accordingly, we affirm Thomas's conviction, but we remand to the trial court for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, C.J.

MAXA, J.

15