183 P.3d 1086 (2008)
STATE of Washington, Respondent,
v.
Leo B. BUNKER, Appellant.
State of Washington, Respondent,
v.
Donald Carl Williams, Appellant.
Nos. 59322-6-I, 59536-9-I.
Court of Appeals of Washington, Division 1.
May 5, 2008.
*1087 Christopher Gibson, Attorney at Law, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
Leo Britton Bunker, Appearing Pro Se.
Prosecuting Atty. King County, King Co. Pros./App. Unit Supervisor, Randi J. Austell, Attorney at Law, King Co. Pros. Attorney, Seattle, WA, for Respondent.
DWYER, J.
¶ 1 In these consolidated cases, Leo Bunker and Donald Williams appeal their felony convictions for violating domestic violence no-contact orders. They do not deny that they violated the terms of their no-contact orders. Rather, they contend that violating the terms of a no-contact order, by itself, was not a crime in Washington at the time they were charged and convicted. According to Bunker and Williams, this is so because the statute criminalizing domestic violence no-contact order violations, RCW 26.50.110, as it was written when they were charged, only imposed *1088 criminal penalties in certain circumstances  namely, when the violator assaults or threatens the victim, or enters a prohibited area named in the order, or if the violated order was issued by a foreign jurisdiction that criminalizes no-contact violations. Bunker and Williams contend, and the State does not debate, that none of these circumstances were either alleged in Bunker's and Williams's charging documents, included as necessary elements of the charged offense in the "to convict" jury instructions, or proved at trial. The State responds, instead, that Bunker and Williams read the statute incorrectly. The State contends that both principles of statutory construction and recent amendments to RCW 26.50.110 demonstrate that the legislature has always intended to impose criminal penalties for domestic violence no-contact order violations. We agree with the State that RCW 26.50.110 criminalized Bunker's and Williams's conduct. Accordingly, we affirm their convictions. We hold, however, that the trial court abused its discretion in sentencing Bunker; thus, we remand his cause for resentencing.

Facts
Bunker
¶ 2 Washington State Patrol Trooper Melvin Hurd pulled Bunker over for speeding in his truck tractor. After Bunker provided Hurd with his driver's license, registration, and other information, Hurd checked his identity against police records. The records check showed that Bunker was subject to two court orders preventing him from contacting Lillian Hiatt. A female passenger was accompanying Bunker in the cab of his truck tractor.
¶ 3 Hurd radioed a request for assistance. Washington State Patrol Troopers James MacGregor and Michael Faulk responded. MacGregor began talking to the passenger, asking her for her name and date of birth. He then had the State Patrol's communications office do a computer search for the name she provided, which returned no results. MacGregor asked her for additional information. She provided him with two other names, neither of which returned results.
¶ 4 Faulk then took a turn speaking to the passenger, calling her "Lillian." She nervously denied that her name was Lillian. When Faulk asked her who she was, she responded that she was Bunker's wife. Faulk then took her into custody and transported her to the Auburn Police Department, where fingerprint analysis showed that she was Lillian Hiatt. When Faulk radioed this information to Hurd and MacGregor, they arrested Bunker for violating the no-contact orders. Bunker was charged in an amended information stating simply that he "did know of and willfully violated the terms of a court order issued on December 16, 2002 by the Clark County Superior Court pursuant to RCW chapter 26.50, for the protection of Lillian G. Hiatt." The information alleged that this violation was contrary to RCW 26.50.110 and was a felony based on Bunker's prior convictions for violating no-contact orders.
¶ 5 A jury found Bunker guilty of violating the terms of the no-contact order, premised on Hiatt's presence in his truck tractor cab. The trial court sentenced Bunker to 33 months imprisonment. Bunker requested that the trial court impose an exceptional mitigated sentence based on the mitigating factor that Hiatt had been a "willing participant in the commission of the offense." The trial court declined to consider imposing an exceptional mitigated sentence, however, stating that "[u]nfortunately, under the statute and the case law I don't think I have the discretion to impose an exceptional sentence downward. If I did have that discretion, I would probably do it."
Williams
¶ 6 A no-contact order barred Williams from coming within 500 feet of Linda Poole's home or work. The order also prohibited Williams from contacting Poole in any way except to telephone her for the exclusive purpose of arranging visits between Williams and the former couple's five-year-old daughter, Carlee.
¶ 7 Williams called Poole on her cellular telephone from her home while she was in the checkout line at the grocery store, asking her where she was. He called her a "slut" *1089 and a "whore," and accused her of "sleeping with her customers."
¶ 8 Williams was still at Poole's home when she returned from the grocery store. He was angry and intoxicated. When she told him that she was going to pick Carlee up from day care, he attempted to take her car keys from her. He grabbed her wrist, but she yanked it free. She fled out the door, got into her truck, locked the door, and drove to Carlee's day care.
¶ 9 Williams called Poole two or three times while she was driving. He called again while she was in the driveway of Carlee's day care provider, Cathy Ramish. He yelled at Poole that if she did not return immediately, he was going to tear her computer and telephone out of the wall and take her truck, her tools, and her dog.
¶ 10 Ramish saw Poole in her driveway and came outside. She could hear screaming coming from Poole's telephone from four or five feet away. As Ramish came closer, she recognized Williams's voice, and could see that the face of Poole's telephone said that the call was coming from "home." Ramish called 911, and police officers came to the daycare to escort Poole and Carlee home. Williams had left by the time they arrived.
¶ 11 Later that evening, after Poole and Carlee had gone upstairs to eat dinner, Poole returned downstairs to retrieve something for Carlee. As Poole came down the stairs, she saw through the window that Williams was standing on the front porch. He was rattling the door knob and attempting to open the door. The door was locked, however, and Williams could not get inside. Poole could tell that he was even more intoxicated than he had been earlier, and told him to go away. After he left, Poole called 911 to report the incident.
¶ 12 The King County Prosecutor charged Williams with three counts of violating a domestic violence no-contact order pursuant to RCW 26.50.110. These were felony charges due to Williams's prior no-contact order violations. After stipulating that he had twice previously violated domestic violence no-contact orders, Williams was tried before a jury. Both Williams's charging documents and the court's instructions to the jury alleged only that Williams had violated the terms of the no-contact order. The jury found him guilty as charged. The trial court imposed concurrent standard range sentences.

Former RCW 26.50.110
¶ 13 Bunker and Williams both contend that their charging documents and the to-convict jury instructions given in their trials were inadequate as a matter of law. They contend that this is so because both the charging documents and the jury instructions omitted essential elements of the crime of violating a no-contact order. At the root of this contention is Bunker and Williams's assertion that the statute criminalizing no-contact order violations, RCW 26.50.110 (as it was written when they were charged and convicted), only imposes criminal penalties for certain types of violations  specifically, those violations that involve assaults of or threats to the victim, that consist of entering a prohibited place named in the order, or are criminal violations of foreign no-contact orders that occur within Washington state. According to Bunker and Williams, because none of these circumstances were pleaded or proved by the State, both of their convictions must be reversed. Because the legislature has always intended, however, that RCW 26.50.110 impose criminal penalties for no-contact order violations like those committed by Bunker and Williams, we reject their argument to the contrary.[1]
¶ 14 The statute at issue, as it was in effect when it was applied to Bunker and Williams, is unfortunately not a virtuosic specimen of legislative drafting:
Whenever an order is granted under this chapter, chapter 7.90, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, a violation of the restraint provisions, or of a provision excluding the person from *1090 a residence, workplace, school, or day care, or of a provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location, or of a provision of a foreign protection order specifically indicating that a violation will be a crime, for which an arrest is required under RCW 10.31.100(2)(a) or (b), is a gross misdemeanor except as provided in subsections (4) and (5) of this section.
Former RCW 26.50.110(1) (2006).
¶ 15 RCW 10.31.100(2)(a), referenced in the above-quoted section, mandates that the police will arrest any person suspected of violating a Washington domestic violence no-contact or protection order, but only if they have probable cause to believe that the restrained person has threatened or performed acts of violence, or has entered an area prohibited by the order. RCW 10.31.100(2)(b), in turn, mandates arrest under similar circumstances for all foreign protection orders, as well as whenever a foreign protection order specifically states that its violation is a crime.
¶ 16 The dispute in these cases centers on which of the former RCW 26.50.110(1)'s clauses that the phrase "for which an arrest is required under RCW 10.31.100(2)(a) or (b)" is intended to modify. Bunker and Williams contend that it is absolutely clear that the phrase is intended to modify every preceding clause in former RCW 26.50.110(1)'s single, long, multi-clause sentence and that, thus, "a violation of the restraint provisions" can be punished as a crime only if "an arrest is required under RCW 10.31.100(2)(a) or (b)." Stated another way, under Bunker's and Williams's reading of former RCW 26.50.110(1), criminal penalties may only be imposed for violations of no-contact orders where the arrest of the violator is mandatory under either RCW 10.31.100(2)(a) or (b). According to Bunker and Williams, for all other violations  in essence, for any non-assaultive violation that occurs anywhere other than in an area specifically listed as prohibited to the restrained party  no criminal penalties may ever be imposed. Rather, the domestic violence victim on whose behalf the order was issued must seek sanctions for civil contempt of court against the no-contact order violator if the victim wishes the violator to be penalized.
¶ 17 At the outset, Bunker's and Williams's contention that former RCW 26.50.110(1) unambiguously means what they say it means is without merit; it is not obvious from the structure of the section what the phrase "for which an arrest is required under RCW 10.31.100(2)(a) or (b)" is intended to modify. It may be that it only applies to the clause "a provision of a foreign protection order specifically indicating that a violation will be a crime." Perhaps, instead, it modifies that clause and the clause "a provision excluding the person from a residence, workplace, school, or day care, or of a provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location." Or perhaps it modifies both of those clauses as well as the phrase "a violation of the restraint provisions." The plain text of the statute does not indicate which construction is most plausible, and each construction gives the statute a different meaning. "When statutory language is susceptible to more than one reasonable interpretation, it is considered ambiguous." Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 808, 16 P.3d 583 (2001).
¶ 18 The primary goal of statutory construction is to discern and carry out the legislature's intent. If that intent cannot be discerned from the plain text of the statute, the court applying the statute must "resort to principles of statutory construction, legislative history, and relevant case law to assist [it] in discerning legislative intent." Cockle, 142 Wash.2d at 808, 16 P.3d 583.
¶ 19 The question presented in this case is made simpler by the fact that the legislature recently declared its intent with respect to RCW 26.50.110. In 2007, the legislature unanimously passed, as chapter 173 of the 2007 laws, Substitute House Bill 1642, which amended RCW 26.50.110 to make clear that nearly any conceivable domestic violence no-contact *1091 order violation is a criminal offense.[2] The legislature specifically stated in the text of Substitute House Bill 1642 that the legislation did not in any way change the substantive terms of RCW 26.50.110, and that the exclusive reason for the amendment was to make clear that the legislature had always intended criminal penalties to be imposed for willful violations of domestic violence no-contact orders:
The legislature finds this act necessary to restore and make clear its intent that a willful violation of a no-contact provision of a court order is a criminal offense and shall be enforced accordingly to preserve the integrity and intent of the domestic violence act. This act is not intended to broaden the scope of law enforcement power or effectuate any substantive change to any criminal provision in the Revised Code of Washington.
LAWS OF 2007, ch. 173, § 1 (emphasis added). Thus, the amendment's sole purpose was to eliminate any question about whether RCW 26.50.110 was intended to impose criminal penalties for violations of domestic violence protective orders generally, rather than (as Bunker and Williams contend) only for a discrete subset of violations.
¶ 20 "When a statute or regulation is adopted to clarify an internal inconsistency to help it conform to its original intent, it may properly be retroactive as curative." State v. MacKenzie, 114 Wash.App. 687, 699, 60 P.3d 607 (2002) (citing In re Pers. Restraint of Matteson, 142 Wash.2d 298, 308-09, 12 P.3d 585 (2000)). Similarly, "[w]hen an amendment clarifies existing law and where that amendment does not contravene previous constructions of the law, the amendment may be deemed curative, remedial and retroactive. This is particularly so where an amendment is enacted during a controversy regarding the meaning of the law." Tomlinson v. Clarke, 118 Wash.2d 498, 510-11, 825 P.2d 706 (1992) (citing State v. Jones, 110 Wash.2d 74, 82, 750 P.2d 620 (1988); Johnson v. Cont'l West, Inc., 99 Wash.2d 555, 559, 663 P.2d 482 (1983)).
¶ 21 The legislature enacted Substitute House Bill 1642 solely in order to make clear that the exact interpretation of RCW 26.50.110 sought by Bunker and Williams is, and always has been, erroneous. There is no appellate opinion interpreting RCW 26.50.110 to the contrary  i.e., providing a "previous construction of the law"  that precludes the retroactive application of the amended RCW 26.50.110 to Bunker and Williams.[3] Accordingly, we hold that the legislature's 2007 amendments to RCW 26.50.110 apply to Bunker and Williams. Furthermore, under that statute, there is no ambiguity whatsoever with respect to whether a violation of the *1092 restraint provisions of a domestic violence no-contact order constitutes a criminal act.
¶ 22 Even were we to decline to accept the applicability of RCW 26.50.110 as it is currently written to these actions, traditional principles of statutory construction also demonstrate that the legislature always intended to criminalize violations of domestic violence no-contact orders. Contending that this is not the case, Bunker and Williams make much of the "last antecedent rule" and the rule of lenity (albeit without ever articulating precisely how those rules apply to former RCW 26.50.110). In basing their statutory interpretation argument solely on these rules, however, Bunker and Williams ignore more fundamental principles of statutory construction.
¶ 23 The last antecedent rule states that "unless a contrary intention appears in the statute, qualifying words and phrases refer to the last antecedent. . . . Yet the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to all antecedents instead of only the immediately preceding one." City of Spokane v. Spokane County, 158 Wash.2d 661, 673, 146 P.3d 893 (2006) (internal citations and quotation marks omitted). Thus, as applied to former RCW 26.50.110, this rule would appear to support Bunker's and Williams's contention that the phrase "for which an arrest is required under RCW 10.31.100(2)(a) or (b)" modifies every preceding clause, up to and including the phrase "violation of the restraint provisions." Moreover, if the last antecedent rule were the sole principle of statutory construction applicable to former RCW 26.50.110, the statute would indeed appear to allow the imposition of criminal penalties for only those no-contact order violations for which the legislature has made arrest mandatory.
¶ 24 By urging us to rely exclusively on the last antecedent rule, however, Bunker and Williams effectively encourage us to disregard the principle that "[a]n act must be construed as a whole, considering all provisions in relation to one another and harmonizing all rather than rendering any superfluous." State v. George, 160 Wash.2d 727, 738, 158 P.3d 1169 (2007). This we will not do.
¶ 25 Even a cursory examination of former RCW 26.50.110's other subsections reveals that the legislature did not intend for contempt of court sanctions to be the primary penalty for domestic violence no-contact order violations. See former RCW 26.50.110(3) ("violation of an order issued under this chapter, chapter 7.90, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or of a valid foreign protection order as defined in RCW 26.52.020, shall also constitute contempt of court") (emphasis added). Moreover, Bunker and Williams fail to explain why, if the legislature had not intended to impose criminal penalties for violations of domestic violence no-contact orders, it has required that each and every no-contact order issued by a court proclaim that "[v]iolation of this order is a criminal offense." RCW 10.99.040. An appellate court "may not interpret any part of a statute as meaningless or superfluous." State v. Lilyblad, 163 Wash.2d 1, 11, 177 P.3d 686 (2008). To give RCW 26.50.110(1) the construction that Bunker and Williams seek would be to do precisely that with respect to these provisions.
¶ 26 The State suggests that we simply ignore the phrase "for which an arrest is required under RCW 10.31.100(2)(a) or (b)" as surplusage in the former statute. But we do not agree that it is necessary to do so in order for the former statute to make sense as written. Notwithstanding the last antecedent rule, the structure of the statute as a whole indicates that the legislature intended the phrase "for which an arrest is required under RCW 10.31.100(2)(a) or (b)" to modify the previous two complete clauses, respectively. That is, "RCW 10.31.100(2)(a)" refers to the clause "or of a provision excluding the person from a residence, workplace, school, or day care, or of a provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location," while "RCW 10.31.100(2) . . . (b)" refers to "or of a provision of a foreign protection order specifically indicating that a violation will be a crime." Former RCW 26.50.110. This construction is not particularly surprising, insofar as the circumstances referenced are precisely those "for *1093 which an arrest is required" in each respective subsection of RCW 10.31.100(2). It also has the advantage of being the only construction whereby each of the subsections of RCW 10.31.100(2)  (a) and (b)  is not being applied to circumstances that, by its own terms, are governed solely by the other subsection.
¶ 27 The rule of lenity is similarly unavailing to the argument advanced by Bunker and Williams. "[U]nder the rule of lenity, where two possible statutory constructions are permissible, we construe the statute strictly against the State in favor of a criminal defendant." State v. B.E.K., 141 Wash. App. 742, 745, 172 P.3d 365 (2007) (citing State v. Gore, 101 Wash.2d 481, 485-86, 681 P.2d 227 (1984)). "But the rule of lenity does not apply where statutes can be reconciled in a way that reflects the legislature's clear intent." State v. R.J., 121 Wash.App. 215, 217 n. 2, 88 P.3d 411 (2004). Here, every indication is that former RCW 26.50.110 was merely awkwardly drafted, and that the legislature always intended to criminalize violations of domestic violence no-contact orders. This being the case, we will not apply the rule of lenity in frustration of the legislature's intent.
¶ 28 The legislature has amended RCW 26.50.110 explicitly to clarify that the construction of the statute that Bunker and Williams seek is incorrect. That amendment applies retroactively to Bunker and Williams because it was for the sole purpose of removing a statutory ambiguity, and changed no substantive law. Even had the legislature not amended RCW 26.50.110, however, Bunker's and Williams's construction of RCW 26.50.110 is itself implausible when RCW 26.50.110(1) is read in conjunction with related sections, as it must be. Accordingly, we conclude that Bunker's and Williams's conduct was criminal and that the charging documents and jury instructions in their cases included all of the necessary elements of the offenses with which they were charged. This being so, we affirm both Bunker's conviction and Williams's conviction.

Bunker's Sentence
¶ 29 Bunker additionally contends that the trial court abused its discretion when it sentenced him because it erroneously believed that it did not have the authority to depart downward from the standard sentence range on the basis of the mitigating factor that Hiatt was willingly present in Bunker's truck tractor.[4] Bunker is correct.
¶ 30 RCW 9.94A.535(1) provides that the sentencing court "may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." One statutorily enumerated mitigating factor is that, "[t]o a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident." RCW 9.94A.535(1)(a). The State contends that this mitigating factor could not be considered by the trial court when it sentenced Bunker because consent is not a defense to the crime of violating a domestic violence protection order. The State is correct that Hiatt's consent is not a defense to Bunker's guilt. But Bunker does not contend that it is. Rather, he contends that the trial court had the discretion to consider, in sentencing him, whether Hiatt was willingly in his presence.
¶ 31 The trial court erroneously concluded that it did not have the discretion to consider this mitigating factor. "While no defendant is entitled to an exceptional sentence below the standard range, every defendant is entitled to ask the trial court to consider such a sentence and to have the alternative actually considered." State v. Grayson, 154 Wash.2d 333, 342, 111 P.3d 1183 (2005). A trial court's erroneous belief that it lacks the discretion to depart downward from the standard sentencing range is itself an abuse of discretion warranting remand. State v. Garcia-Martinez, 88 Wash. App. 322, 329-30, 944 P.2d 1104 (1997).
¶ 32 While there is, of course, no requirement that the trial court actually impose a mitigated exceptional sentence, we remand Bunker's cause for resentencing to enable the trial court to exercise its discretion in *1094 determining whether an exceptional sentence is warranted.
¶ 33 With respect to Bunker's appeal, the trial court is affirmed in part and reversed in part, and the cause is remanded for resentencing.
¶ 34 With respect to Williams's appeal, the trial court is affirmed.
WE CONCUR: SCHINDLER, C.J., and BECKER, J.
NOTES
[1] The contention presented raises a question of statutory interpretation, reviewed de novo on appeal. State v. Lilyblad, 163 Wash.2d 1, 5, 177 P.3d 686 (2008).
[2] RCW 26.50.110, in its current form, provides:

(1)(a) Whenever an order is granted under this chapter, chapter 7.90, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, a violation of any of the following provisions of the order is a gross misdemeanor, except as provided in subsections (4) and (5) of this section:
(i) The restraint provisions prohibiting acts or threats of violence against, or stalking of, a protected party, or restraint provisions prohibiting contact with a protected party;
(ii) A provision excluding the person from a residence, workplace, school, or day care;
(iii) A provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location; or
(iv) A provision of a foreign protection order specifically indicating that a violation will be a crime.
[3] Bunker and Williams contend that our opinion in Jacques v. Sharp, 83 Wash.App. 532, 922 P.2d 145 (1996), provides a contrary judicial construction that prevents the retroactive application of Substitute House Bill 1642. But the version of RCW 26.50.110 examined in Jacques was different than the version we are examining here (the version created by the 2000 amendments to RCW 26.50.110). In other words, we did not, in Jacques, interpret the version of RCW 26.50.110 currently at issue because that version did not yet exist.

Indeed, had the version of RCW 26.50.110 effective in Jacques been in effect when Bunker and Williams were arrested, there is no question that their conduct would have been criminal  former RCW 26.50.110 (1991) provided criminal penalties for any violation of a no-contact order's "restraint provisions," which included prohibitions on contact with the domestic violence victim. See former RCW 26.50.110 (1991); former RCW 26.50.060(1)(g) (1991); Jacques, 83 Wash. App. at 542, 922 P.2d 145 (former RCW 26.50.110 (1991) categorizes violations of a court order's restraint provisions as misdemeanors).
[4] Williams does not separately appeal his sentence.