FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JUN 11 AM 8:58

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 76441-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| TRACY JUROD DUBOSE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 11, 2018 |
| | ) | |

BECKER, J. — Appellant Tracy Dubose was convicted of violating a domestic violence protection order. He was sentenced to 60 months' imprisonment and up to 12 months of community custody. Dubose appeals his sentence. We reject his argument that his counsel provided ineffective assistance by failing to request an exceptional sentence below the standard range. We remand so the trial court may rewrite the sentence to ensure that it does not exceed the statutory maximum.

The Edmonds Municipal Court issued a domestic violence protection order against Dubose on March 18, 2013, to run for five years. The order barred Dubose from contacting Leah Henson.

On July 13, 2015, Washington State Community Custody Officer William Wolfe received a call from Henson's sister. Henson's sister informed Wolfe that Dubose was living with Henson in violation of the protective order and that Dubose was abusing Henson. Wolfe and David Hayes of the Snohomish County

1

Sheriff's Office arrived at Henson's apartment. There they found Dubose and a woman who identified herself as "Lisa Charnes." The woman repeated that name while simultaneously shaking her head from side to side to indicate no. Hayes removed the woman from the apartment. Once outside, she revealed that her name was Leah Henson. Henson reportedly told officers that she was terrified of Dubose and that Dubose had instructed her to lie about her name. Dubose was arrested and charged with violating the protection order.

Dubose repeatedly called Henson from jail, further violating the no-contact order. According to officers who listened to the conversations, Dubose used words and phrases that they believed were coded to tell Henson what to say to law enforcement and what she should testify to at trial.

Released pending trial, Dubose moved back in with Henson in violation of a court order requiring him to reside with his mother. On July 27, 2016, Dubose and Henson got into an argument. Dubose took Henson's keys, phone, and money. Henson fled the apartment and called her sister, who then called for emergency assistance. Law enforcement officers were dispatched to Henson's apartment. Dubose was arrested again.

After a two day trial on the 2015 charge, Dubose was convicted. He then pled guilty to the 2016 violation of the protection order. Dubose was sentenced to 60 months' imprisonment and "up to 12 months" of community custody for the July 13, 2015, violation, with the sentence for the 2016 violation set to run concurrently.

Ineffective Assistance

Dubose argues that trial counsel rendered ineffective assistance by failing to request an exceptional sentence below the standard range. "To demonstrate ineffective assistance of counsel, a defendant must make two showings: (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). To establish prejudice, the defendant bears the burden of showing "the result of the proceeding would have been different but for counsel's deficient representation." McFarland, 127 Wn.2d at 337.

A sentencing court "may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." RCW 9.94A.535(1). Whether the victim was an initiator is one of the mitigating factors for courts to consider. RCW 9.94A.535(1)(a).

Dubose cites State v. Bunker, 144 Wn. App. 407, 183 P.3d 1086 (2008), aff'd, 169 Wn.2d 571, 238 P.3d 487 (2010), and State v. McGill, 112 Wn. App. 95, 47 P.3d 173 (2002). In Bunker, the defendant was convicted of violating a protective order. Bunker, 144 Wn. App. at 409. The trial court erroneously believed it lacked discretion to impose an exceptional sentence downward on the

basis that the protected party had initiated contact. The trial court stated, "'If I did have that discretion, I would probably do it.'" Bunker, 144 Wn. App. at 411. This court remanded for resentencing to enable the trial court to properly exercise its discretion. Bunker, 144 Wn. App. at 422.

The defendant in McGill was convicted of delivering cocaine. McGill, 112 Wn. App. at 97. Defense counsel did not request an exceptional sentence. As in Bunker, the trial court indicated a willingness to impose a lower sentence but did not believe it had the discretion to do so. McGill, 112 Wn. App. at 98-99. This court held defense counsel provided ineffective assistance of counsel by failing to apprise the trial court of its ability to impose an exceptional sentence. McGill, 112 Wn. App. at 101-02.

This case is not like Bunker or McGill. There is no reason to believe the trial court was unaware of its discretion to impose an exceptional sentence downward. The trial court did not indicate a willingness to impose a lower sentence. To the contrary, the trial court rejected Dubose's request for a reduced sentence through the drug offender sentencing alternative. In doing so, the trial court made clear its belief that Dubose's actions merited a maximum sentence:

> This is a case that calls for Mr. Dubose to finally deal with whatever anger issue he has. And until such time as he does that, he remains a threat to society. And as society's conscience, I will lock him away for as long as possible until such time as he decides to take advantage of whatever services he needs to take advantage of so that he can live in society without being abusive to people.
> Therefore, on both cause numbers, I'm sentencing him to the maximum amount allowed by law, 60 months on each count, to run concurrent to each other.

4

On this record, it was not unreasonable for defense counsel to refrain from asking for an exceptional sentence below the standard range. The trial court's remarks show that any request for an exceptional sentence would not have met with success. Dubose's claim of ineffective assistance is denied.

Maximum Sentence

The trial court sentenced Dubose to a prison term of 60 months plus "up to 12 months" of community custody. Dubose argues that his sentence exceeds the maximum allowed under the Sentencing Reform Act.

Interpretation of the Sentencing Reform Act is a question of law that this court reviews de novo. State v. Bruch, 182 Wn.2d 854, 859, 346 P.3d 724 (2015). The Sentencing Reform Act imposes maximum terms for each class of felony. RCW 9A.20.021. The combined terms of imprisonment and community custody may not exceed the maximum term. RCW 9.94A.701(9). The violation of a protective order is a class C felony if the offender has two or more previous convictions for violating such an order. RCW 26.50.110(5). The maximum term for a class C felony is five years. RCW 9A.20.021(1)(C).

The State concedes that the sentence imposed is inconsistent with Bruch. The sentence must be rewritten to comply with Bruch. 182 Wn.2d at 857.

Dubose also argues that the trial court erred by imposing a protective order with no end date. The State concedes this point as well, attributing the lack of end date to a scrivener's error. At sentencing, the trial court stated orally that the protective order would run for five years, but the sentence was not updated to reflect this.

5

The sentence is remanded for correction of error consistent with this opinion.

WE CONCUR:

_____ Becker, J.

_____ Mann, J.

_____ Appelwick, C.J.