**FILED**
**JULY 27, 2023**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38841-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSEPH A. RICHMOND, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Having been granted a third resentencing for a 2016 conviction of felony murder after *State v. Blake*,[1] Joseph Richmond requested an exceptional mitigated sentence, relying on his failed trial defense of self-defense. The resentencing court entertained the request and reduced Mr. Richmond's sentence more than another court might have based on the reduced offender score, but it rejected his request for a sentence below the standard range.

Mr. Richmond appeals, asking us to hold that sentencing courts must not only entertain a request for a below-standard range sentence but also—if they deny the request—must explain the weight given to the alleged mitigating factor and enter findings that can be tested for completeness and evidentiary support on appeal.

---

[1] 197 Wn.2d 170, 481 P.3d 521 (2021).

The authority on which Mr. Richmond relies is decisions involving death penalty sentencing and sentencing of juveniles, where the federal and state constitutions require a demonstration of close consideration of case-specific mitigating circumstances. When sentencing an adult like Mr. Richmond,[2] in a noncapital case, there is no constitutional or statutory requirement that a court that denies a below-standard range sentence explain the weight given to an alleged mitigating factor or enter findings. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In September 2014, Mr. Richmond caused the death of Dennis Higginbotham by swinging a two-by-four piece of lumber like a baseball bat, striking Mr. Higginbotham's head and causing severe head trauma. *State v. Richmond*, 3 Wn. App. 2d 423, 427-28, 415 P.3d 1208 (2018). Mr. Higginbotham died at Harborview Medical Center. The violence occurred after Mr. Richmond's estranged girlfriend arrived at his home to collect belongings, accompanied by Mr. Higginbotham and a female friend. *Id.* at 426. When Mr. Richmond did not provide the cooperation his ex-girlfriend was requesting, she threatened to break into a shed. At that point, Mr. Richmond called police, an officer arrived and mediated an apparent solution, and the officer left. *Id.* at 426-27. Mr. Richmond and Mr. Higginbotham resumed arguing, however, and Mr. Richmond entered his house, emerged with the two-by-four, and continued arguing with Mr. Higginbotham.

_____

[2] Mr. Richmond was 29 years old at the time he committed the second degree murder.

2

*Id.* at 427-28. As they argued, Mr. Richmond warned Mr. Higginbotham not to come any closer to him. When Mr. Higginbotham nonetheless took a step in Mr. Richmond's direction, Mr. Richmond swung the fatal blow. *Id.* at 427-28. With Mr. Higginbotham's death, Mr. Richmond was charged with felony murder.

At trial, Mr. Richmond relied on a theory of self-defense. The trial court gave the jury full self-defense instructions as well as an initial aggressor instruction. *Id.* at 429. The jury found Mr. Richmond guilty. *Id.* at 430. He received a standard range sentence of 240 months of confinement.

Mr. Richmond appealed, making several assignments of error. A majority of this court affirmed the conviction over a dissent that agreed with Mr. Richmond's challenge to the giving of a first aggressor instruction. *Id.* at 423. The case was remanded to the trial court for a comparability analysis of a crime committed in Idaho that had been included in Mr. Richmond's offender score. *Id.* at 437. Mr. Richmond petitioned the Washington Supreme Court for review, which was denied. *State v. Richmond*, 191 Wn.2d 1009, 424 P.3d 1223 (2018).

The first resentencing resulted in a reduced offender score and a reduction in the period of confinement to 231 months. The court also provided Mr. Richmond with partial relief from his legal financial obligations (LFOs) in light of the Washington Supreme Court's then-recent decision in *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). Mr. Richmond again appealed. This court rejected Mr. Richmond's new

3

challenges to terms of his community custody but remanded for a second resentencing

because he had not received the full relief from his LFOs required by *Ramirez*.

Mr. Richmond thereafter filed a personal restraint petition that raised issues of

prosecutorial misconduct and ineffective assistance of counsel. This court rejected both

claims.

In the meantime, our Supreme Court decided *Blake*, which declared Washington's

strict liability drug possession statute unconstitutional. Since simple possession

convictions had been included in his offender score, Mr. Richmond sought and was

determined to be entitled to another resentencing.

At the outset of this third resentencing hearing, Mr. Richmond's lawyer told the

court that he intended to request consideration of a mitigating factor and asked if the

State disputed that a *Blake* resentencing was a full resentencing. The prosecutor agreed it

was a full resentencing. The court commented:

> It wouldn't be much of a resentencing if we were just going to take the old
> sentence and knock it down a chunk. It wouldn't be a real hearing in my
> book. So I think that Mr. Richmond's entitled to make whatever argument
> he wants to. . . . So go right ahead, sir.

2 Rep. of Proc. (RP) at 8.[3]

---

[3] Mr. Richmond's motion to transfer the verbatim report of proceedings of his trial
and original sentencing for inclusion in the record for this appeal was granted, and we
refer to it as "1 RP." We refer to the separate verbatim report of proceedings of his third
resentencing as "2 RP."

Mr. Richmond's lawyer proceeded to make a well-organized presentation that did not challenge the jury's verdict but argued that even where a defense fails, there can be gradations to blameworthiness. He pointed to six circumstances that he argued distinguished the killing of Mr. Higginbotham from many other homicides charged as second degree murder. His presentation prompted no disagreement or skepticism from the judge, who thanked him for the argument, adding, "Well done." 2 RP at 14.

In the prosecutor's response, she pointed out that the resentencing judge had been the trial judge and recounted evidence from the trial that she argued belied a characterization of Mr. Richmond as less blameworthy than others convicted of felony murder.[4] She pointed out that vacating Mr. Richmond's prior simple possession conviction reduced his standard range by nine months and asked the court to limit the reduction of Mr. Richmond's term of confinement to the same nine months. A nine month reduction would have resulted in a 222 month term of confinement.

Given a chance to speak, Mr. Richmond spoke at some length, without interruption.

---

[4] At Mr. Richmond's original sentencing, defense counsel had not asked for an exceptional sentence, but had asked for a low-end sentence in light of the facts that Mr. Richmond had been at his home and "really felt threatened." 1 RP at 1200. In announcing a sentence above the mid-point at that time, the court said:

> And Mr. Richmond, I heard your testimony. And even under your version, I didn't think that your use of the force that was used would have been reasonable under the circumstances.

1 RP at 1207.

When Mr. Richmond was done, the court commented that its position following

*Blake* was that it "would give an entirely new sentencing hearing, [if] people wanted one,

and that's what we've been doing [here]." 2 RP at 24. After thanking Mr. Richmond and

his lawyer for their presentations and making a few comments about the importance of

listening to everyone and the regrettably tragic outcome of Mr. Richmond's and Mr.

Higginbotham's encounter, the court said, addressing Mr. Richmond:

> And you're not wrong in everything you said about the facts in this case. You're not right in my view, but you're not wrong. Right? I mean, you got a lot of it right, but you're seeing it through your perspective, which I don't know what other perspective you could look at it from really. You're the only person that was in your shoes at that moment, and so it does make sense that you would give us that viewpoint.
>
> But I do not find that the evidence supports a mitigating sentence. I think a standard range sentence is still appropriate. And it was a standard range of 165 to 265, a 430 [sic] was the mid point before. I went a little above that last time. This time I'll go mid point of 204. So that will be the sentence that the Court imposes today, 204 months.

2 RP at 25 (alteration in original). Mr. Richmond appeals.

ANALYSIS

Mr. Richmond assigns error to the rejection of his request for an exceptional

sentence. Before we turn to his two challenges to the court's decision-making, we review

the structuring of a sentencing court's discretion by the legislature.

6

I.    A SENTENCING COURT'S DISCRETION IN SENTENCING IS THAT WHICH HAS BEEN
      GIVEN AND STRUCTURED BY THE LEGISLATURE

The fixing of legal punishments for criminal offenses is a legislative function and includes the power of the legislature to provide a minimum and maximum term within which a trial court can exercise discretion. *State v. Ammons*, 105 Wn.2d 175, 180, 713 P.2d 719, 718 P.2d 796 (1986) (quoting *State v. Le Pitre*, 54 Wash. 166, 169, 103 P. 27 (1909)). The power of the legislature in this respect "'is plenary and subject only to constitutional provisions against excessive fines and cruel and inhuman punishment.'" *Id.* (quoting *State v. Mulcare*, 189 Wash. 625, 628, 66 P.2d 360 (1937)).

In the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, the legislature has provided that "[t]he court *may* impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535 (emphasis added). It has provided that "[t]he court *may* impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." RCW 9.94A.535(1) (emphasis added). The SRA provides a nonexclusive list of mitigation circumstances, one being that "[t]o a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident." RCW 9.94A.535(1)(a). This, and several other mitigating factors, are recognized as supporting mitigation for a "failed defense." *State v. Jeannotte*, 133 Wn.2d

7

847, 851, 947 P.2d 1192 (1997) (citing *State v. Hutsell*, 120 Wn.2d 913, 921, 845 P.2d 1325 (1993)). The provisions do not infringe on a judicial power because a trial court's discretion in sentencing "is that which is given by the Legislature." *Ammons*, 105 Wn.2d at 181. "The Legislature's structuring of the trial court's discretion does not infringe upon a judicial power." *Id.*

RCW 9.94A.585(1) provides that "[a] sentence within the standard sentence range . . . for an offense shall not be appealed." This does not offend the Washington State Constitution's guarantee in article I, section 22 of a right to appeal in criminal cases,[5] because our Supreme Court has given the statute a limiting construction. In *Ammons*, the court held that the statutory provision, then codified as RCW 9.94A.210(1) (1984), "only preclud[es] appellate review of challenges to the *amount of time imposed* when the time is within the standard range," and "[w]hen the sentence given is within [that] range then as a matter of law there can be no abuse of discretion." 105 Wn.2d at 182-83 (emphasis added); *accord State v. Delbosque*, 195 Wn.2d 106, 126, 456 P.3d 806 (2020). An appellant is not precluded from challenging on appeal the procedure by which the sentence within the standard range was imposed. *Ammons*, 105 Wn.2d at 183.

Mr. Richmond's appeal does not challenge the 204-month confinement imposed by the resentencing court; it challenges one substantive and one procedural aspect of the

---

[5] Article I, section 22 provides in relevant part, "In criminal prosecutions the accused shall have . . . the right to appeal in all cases."

court's decision denying his request for an exceptional sentence. We therefore need not review his third assignment of error, which applied only if we deemed his appeal foreclosed by RCW 9.94A.585(1).

II.   MR. RICHMOND FAILS TO DEMONSTRATE THAT THE RESENTENCING COURT RELIED ON AN IMPERMISSIBLE REASON OR FOLLOWED AN IMPERMISSIBLE PROCEDURE

Mr. Richmond's first and second assignments of error are related. He complains that the resentencing court abused its discretion by (1) "declining to apply the first-step subjective test and consequently failing to give mitigating effect to Mr. Richmond's claim of failed self-defense" and (2) "fail[ing] to make adequate oral and/or written findings explaining its decision not to accord mitigating effect of Mr. Richmond's defensive actions." Br. of Appellant at 1.

One aspect of Mr. Richmond's argument on this score is his contention that if a sentencing court denies a request for an exceptional mitigated sentence, it "abuses its discretion when it fails to give mitigating effect to mitigating evidence" or fails to "acknowledge[e] the mitigating quality of [a mitigating] fact and then explain how the court weighed [it and] other facts." Br. of Appellant at 4, 12. The only authority he cites for the proposition that a sentencing court must acknowledge mitigating evidence, weigh it, explain how it weighed it, and then give it mitigating effect, are decisions dealing with the death penalty or with juveniles.

9

He cites *Eddings v. Oklahoma*, 455 U.S. 104, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982), in which the United States Supreme Court reviewed the death penalty imposed on Eddings. At age 16, Eddings used his father's shotgun to shoot and kill an Oklahoma highway patrol officer who pulled over a car that Eddings and several younger companions were using to run away from their homes. By the time of Eddings's sentencing, the plurality opinion in *Lockett v. Ohio* had held that the Eighth and Fourteenth Amendments to the United States Constitution required that the sentencer in a death penalty case must "'not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" *Eddings*, 455 U.S. at 110 (quoting *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978) (plurality opinion)). The sentencing judge and appellate court in Eddings's case considered his youth as a mitigating factor but refused to consider, as mitigating, evidence of Eddings's difficult, troubled family history and emotional disturbance. *Id.* at 115.

In holding that the Oklahoma court was constitutionally required to consider the evidence as a mitigating factor, the *Eddings* court quoted *Lockett*'s recognition that the imposition of death by public authority is profoundly different from all other penalties. *Id.* at 110. In addition to holding that the death penalty "is so profoundly different from all other penalties," the plurality opinion in *Lockett* had stated "[t]he need for treating

10

each defendant in a capital case with that degree of respect due the uniqueness of the individual is far more important than in noncapital cases." 438 U.S. at 605. The case was remanded for consideration of the evidence by the Oklahoma court. The decision is unhelpful to Mr. Richmond, because Mr. Richmond's case is not a capital case.

The other case on which Mr. Richmond relies is *State v. Bassett*, 192 Wn.2d 67, 73, 428 P.3d 343 (2018), which held that sentencing juvenile offenders to life in prison without the possibility of parole or early release constitutes cruel punishment and is unconstitutional under article I, section 14 of the Washington Constitution. That holding was limited to juvenile offenders, based on the increasing scientific recognition and national consensus that children are less criminally culpable than adults. Mr. Richmond was nowhere near being a juvenile when he committed his crime.

*Eddings* and *Bassett* fall within the limited "cruel" or "cruel and unusual" punishment area in which *Ammons* observed that the legislature's power to structure judicial sentencing discretion yields to the courts' obligation to apply the federal and state constitutions. Unlike in *Eddings* and *Bassett*, in Mr. Richmond's case, there is no constitutional command that required the resentencing court to justify its weighing and application of mitigating facts identified by the defendant. Outside the limited context of constitutionally-commanded consideration of mitigation, Washington decisions have repeatedly held, "[N]o defendant is entitled to an exceptional sentence below the standard range." *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005); *accord State v.*

11

*Bunker*, 144 Wn. App. 407, 421, 183 P.3d 1086 (2008), *aff'd*, 169 Wn.2d 571, 238 P.3d 487 (2010); *State v. Lemke*, 7 Wn. App. 2d 23, 27, 434 P.3d 551 (2018).

A corollary, of course, is that "every defendant is entitled to ask the trial court to consider such a sentence and to have the alternative actually considered." *Grayson*, 154 Wn.2d at 342 (citing *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997)). A trial court abuses its discretion when it refuses categorically to impose an exceptional sentence below the standard range under any circumstances or consider it for a class of offenders—both are, effectively a failure to exercise discretion. *Id.* Another example of an impermissible basis for denying such a sentence occurs where the court operates under the mistaken belief that it lacks discretion. *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017). In cases in which an impermissible basis for refusing to impose such a sentence is found, it is because the appellant is able to point to evidence in the record that there was or could have been a categorical refusal or a misapprehension by the court of its discretion.

No categorical refusal or misapprehension of the court's discretion is demonstrated here. At most, Mr. Richmond seizes on the resentencing court's comments to him about looking at things "through your perspective," and characterizes that as revealing an "unwillingness to employ the subjective standard component of self-defense." Br. of Appellant at 8.

We construe the court's comments very differently. Mr. Richmond said almost nothing about self-defense, per se, during his allocution. He started off by disputing that he could fairly have been characterized as a first aggressor. He disputed the prosecutor's argument that the evidence most strongly suggested that he was the aggressor. He reminded the court that he called for police help. He reminded the court that it had excluded toxicology evidence of Mr. Higginbotham's blood alcohol level and methamphetamine use that Mr. Richmond believed proved Mr. Higginbotham was the aggressor. He talked about his original sentence being excessive. He talked about his family missing him. He expressed regret.

The resentencing court had instructed the jury correctly on the subjective aspect of self-defense.[6] There is no reason to believe that when the court said to Mr. Richmond at the third resentencing, "[Y]ou got a lot of it right, but you're seeing it through your perspective," 2 RP at 25, the statement revealed the court's confusion about substantive

---

[6] The court's instruction 17 told jurors that homicide is justifiable when, among other factors, "the slayer employed such force and means [as] a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer taking into consideration all the facts and circumstances as they appeared to him at the time of and prior to the incident." 1 RP at 1114.

Its instruction 18 told jurors, "A person is entitled to act on appearances in defending himself if that person believes in good faith and on reasonable grounds that he is in actual danger or great personal injury, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for a homicide to be justifiable." *Id.*

13

law. In context, the resentencing court was talking about Mr. Richmond's inability to view objectively what the State had proved at trial.

Finally, Mr. Richmond contends that written findings and conclusions of law were required. He cites no supporting authority. RCW 9.94A.535 provides that "[w]henever a sentence outside the standard range is *imposed*, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law." (Emphasis added.) There is no statutory requirement that a court provide reasons for *refusing* to impose an exceptional sentence. By negative implication, written findings are not required in that event.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

14