IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>     v.<br><br>JAMES ROBERT LAKE,<br><br>                    Appellant. | No. 85644-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — A jury convicted James Lake of assault in the second degree with a firearm after hearing conflicting testimony from Lake and the victim that suggested the shooting resulted from an earlier road rage incident where both, as the trial court observed at sentencing, were partly to blame. The court expressly stated it was not making mitigating factor findings, but did follow Lake's request for the low end of the standard range, three months confinement.[1] Lake appeals his sentence, arguing his counsel was ineffective for failing to inform the court that a mitigating factor under RCW 9.94A.535(1)(a) applied and for failing to request an exceptional sentence below the standard range. Because Lake does not show he was prejudiced, we affirm.

---

[1] The court also imposed the mandatory 36-month firearm sentence enhancement.

## FACTS

Lake was driving his hatchback vehicle through Oak Harbor on State Route 20 after dark in November 2022.  As he drove in the right lane, a sedan, driven by Maurizio Tonini, attempted to merge into his lane from the left.  The vehicles made contact.  Lake and Tonini gave conflicting testimony at trial as to what happened next.  Parts of both their testimony contradicted that of an Island County Sheriff's deputy who was an eyewitness to events after the vehicles had made contact.

According to Tonini, Lake's vehicle was in his blind spot when he tried to move into the right lane and his car "touched [Lake's] vehicle."  Tonini slowed down, expecting to exchange information, but Lake sped away.  Tonini followed.  He later crossed into the oncoming lane to get ahead of Lake and stopped his vehicle in the middle of the road in front of Lake.  Tonini claimed that after stopping, he got out of his car, walked to the passenger side of his vehicle to check the damage, then walked back toward his driver's side.  As Tonini was walking back to the driver's side of his vehicle, he heard someone yell, "get back in your car," before seeing a bright flash from the area between the driver's side door and side mirror of Lake's vehicle and hearing a "boom."  Tonini realized he had been shot in his right hand.  Lake drove away.  Tonini testified that he did not talk to nor make any gestures toward Lake throughout the interaction.

Lake testified that Tonini's vehicle was to his left and was trying to pass him, so Lake sped up to prevent Tonini from merging.  Lake believed Tonini had attempted to "push [Lake] out of their way" and Tonini's vehicle hit Lake's vehicle.  Lake stated the collision "wasn't a heavy tap."  Lake did not stop his vehicle, explaining he did not feel the need to stop because he believed that both parties were responsible for the

collision. Lake stated both drivers "made a mistake there" and could "just be over with it and go home." Lake continued driving, but later noticed Tonini's vehicle following him so Lake sped up to get away. Lake testified the vehicles were traveling at approximately 70 miles per hour, but he slowed before upcoming curves in the road. After Lake slowed, Tonini passed in front of Lake and stopped in the middle of the road, forcing Lake to stop. Lake explained that he could not drive around Tonini to leave because Tonini's car was in the right lane and Tonini was in the left lane once he exited his vehicle. Lake testified that Tonini got out of his car and moved toward Lake in "an aggressive manner," with his hands in fists. Lake stated he grabbed his gun in response because he was afraid and Tonini was "chasing" him. Lake testified that he told Tonini twice to "get back in the car and just go" before he attempted to fire a shot toward an empty field to the left of the road "to scare him off so [Lake] could get out of the situation." After firing, Lake drove away "because [he] was still afraid."

Neither driver was aware that at some point Island County Sheriff's deputy Marie Hanshaw was behind both vehicles. Hanshaw was transporting an arrestee at the time and observed the vehicles reach speeds of about 70 miles per hour on the two-lane road. Hanshaw flashed her "very, very bright" headlights while the vehicles came to a stop. Hanshaw stopped approximately 40 feet behind the front vehicle and 25 feet behind the rear vehicle with her headlights on. As Hanshaw radioed for backup, she saw Tonini step out of his vehicle and walk back toward Lake's stopped car. Tonini did not make any gestures and his hands were empty. Hanshaw was trying to open her door to make contact when she heard a "pop," which she recognized as gunfire. Lake then drove away. Tonini bent over and said he had been shot. Believing Tonini was

not seriously injured, Hanshaw called for medical assistance and pursued Lake, who immediately pulled over.

Lake was charged with assault in the second degree with a firearm. Lake argued to the jury he was acting in self-defense. A jury convicted Lake of assault in the second degree and found that Lake was armed with a firearm at the time of the commission of the offense.

Sentencing

Neither party submitted sentencing memoranda. At the sentencing hearing, the State recommended the high end of the standard range, nine months, to be served consecutively with the mandatory 36-month sentence for the firearm enhancement. During the State's argument, the court asked for confirmation from the State regarding its discretion as to the 36-month enhancement. The court asked,

> Assume for a moment that the Court found mitigating factors, the Court cannot go below 36 months because the three-year enhancement, based on the Special Verdict, for a Firearm Enhancement is mandatory and must follow consecutively any other sentence the Court imposes. Do I have that correct?

The State responded that the trial court was correct.

Defense counsel requested a total sentence of 39 months, which included the low end of the standard range, three months, "[b]ased largely in part on the fact that Mr. Lake doesn't have any prior criminal history. He showed up reliably for every hearing, even when he had the opportunity to not have to show up. I think that shows some responsibility on his part." Counsel acknowledged the jury rejected Lake's self-defense theory, but nonetheless Lake's testimony that he was frightened and felt threatened warranted a low-end sentence "in the situation." Lake told the court he only fired his gun because he "was trying to scare [Tonini] off so that I could get away from the

4

situation because I was scared for my life."

In its ruling, the trial court recognized that Tonini had played a part in the situation, noting that Tonini "followed [Lake], and at times at speeds that were far above the speed limit" and proceeded toward Lake after stopping in the middle of the road and exiting his vehicle. The trial court stated "[f]rom the Court's perspective, although the Court is not making mitigating factor findings, it is simply a fact that Mr. Tonini played a part in this process." The trial court explained that while each person bore some responsibility, Lake's reaction was "unreasonable."

The court sentenced Lake to the low end of the standard sentencing range, imposing three months for the assault and 36 months for the firearm enhancement, totaling 39 months' confinement.

Lake appeals.

## DISCUSSION

Lake argues that his trial counsel provided ineffective assistance because he did not inform the court that a mitigating factor under RCW 9.94A.535(1)(a) applied, and did not request an exceptional sentence below the standard range.

RCW 9.94A.535(1) provides illustrative examples of mitigating factors a court may consider in departing from the standard range. One such mitigating circumstance can be shown when "to a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident." RCW 9.94A.535(1)(a).

The right to effective assistance of counsel is guaranteed by the Sixth Amendment to the federal constitution and article 1, § 22 of the Washington state constitution. State v. Thomas, 109 Wn.2d 222, 229, 743 P.2d 816 (1987). To establish

ineffective assistance of counsel, the defendant must show (1) their counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance of their counsel prejudiced and deprived the defendant of a fair trial. Thomas, 109 Wn.2d at 225 (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Failure to demonstrate either prong ends our inquiry. State v. Classen, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

A sentencing court may exercise its discretion to impose an exceptional sentence below the standard range if it finds the existence of mitigating circumstances by a preponderance of the evidence. RCW 9.94A.535(1). Lake relies on State v. McGill, 112 Wn. App. 95, 47 P.3d 173 (2002), and State v. Bunker, 144 Wn. App. 407, 183 P.3d 1086 (2008). In each, the trial court made statements indicating it was unaware of its ability to exercise discretion by imposing an exceptional sentence.

In Bunker, after the defendant requested an exceptional sentence under RCW 9.94A.535(1), the trial court stated "[u]nfortunately, under the statute and the case law I don't think I have the discretion to impose an exceptional sentence downward. If I did have that discretion, I would probably do it." 144 Wn. App. at 411 (alteration in original). This court held that the trial court erred because "a trial court's erroneous belief that it lacks the discretion to depart downward from the standard sentencing range is itself an abuse of discretion warranting remand." Id. at 421. In McGill, while imposing a sentence for three drug convictions, the court stated, "I have no option but to sentence you within the [standard] range on these of 87 months to 116 months." 112 Wn. App. at 99. Defense counsel failed to cite authorities which would permit the court to impose an exceptional sentence below the standard range because the multiple offense policy of

the Sentencing Reform Act of 1981 (SRA) resulted in an excessive sentence. Id. at 97. This court held that it was ineffective assistance for trial counsel not to inform the court of its ability to exercise discretion because a "trial court cannot make an informed decision if it does not know the parameters of its decision-making authority." Id. at 102.

Unlike McGill and Bunker, there is no indication that the trial court in the instant case was unaware of its ability to exercise discretion in finding mitigating circumstances and imposing an exceptional sentence below the standard range. The record suggests the opposite. The court specifically asked the State to confirm that the 36-month sentence enhancement could not be reduced even "assum[ing] for a moment that the court found mitigating factors." If the court did not believe it had any discretion to find mitigating factors, there would have been no need for the court to so inquire of the State. The trial court demonstrated that it was well aware of Tonini's actions. "From the court's perspective, although the Court is not making mitigating factor findings, it is simply a fact that Mr. Tonini played a part in this process." The court explained:

> He was the one attempting to merge over. The cars touched. Mr. Lake didn't stop. Mr. Tonini followed him, and at times at speeds that were so far above the speed limit that [the deputy], who had her own responsibilities already because she had somebody in the backseat who was apprehended, she nonetheless felt called upon to participate because it was dangerous.
> And then, of course, we have the sort of the – the facts that each participant in the process testified differently about how it came to pass that Mr. Tonini, who starts out in back of Mr. Lake, his car ends up in front of Mr. Lake, stopped in a lane, in the lane in which they were traveling, not pulled over to the side.
> That Mr. Tonini exits his vehicle and starts moving back towards - in the – if we don't say towards Mr. Lake, certainly it was conceded in the direction of Mr. Lake's car.

The court found that both Lake and Tonini had some responsibility and participated in the events. Nonetheless, the court found that "[w]hat Mr. Lake did next was

unreasonable, and Jury properly found that it constituted a crime," and the court was "comfortable" finding that "it is appropriate to sentence at the bottom end of the standard range." The record shows that this is not the circumstance where the trial court refused to exercise discretion or has relied on an impermissible basis for refusing to impose an exceptional sentence. See State v. McFarland, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017). Moreover, defense counsel has no obligation to advocate for an exceptional sentence below the standard range. State v. Knight, 176 Wn. App. 936, 958 n.28, 309 P.3d 776 (2013). That is because the trial court understood it could find mitigating factors and was aware of the victim's participatory role in the events that eventually lead to the shooting, but, nonetheless, exercised its discretion in not imposing an exceptional sentence. Because Lake fails to show prejudice, his claim of ineffective assistance fails.

We affirm.

Coburn, J.

WE CONCUR:

Birk, J.

Hazelrigg, ACJ